[Civil No. 2501.   Filed October 5, 1926.]

[249 Pac. 747.]

## UNITED BANK & TRUST COMPANY, a Corporation, Appellant, v. W. W. JONES, Appellee.

1. COSTS—FAILURE TO REQUIRE PLAINTIFF TO GIVE SECURITY FOR COSTS ON FILING OF DEFENDANT'S MOTION THEREFOR, OR TO DISMISS CASE, HELD NOT ERROR (CIV. CODE 1913, PAR. 643).—Court's failure to require plaintiff to give security for costs as required by Civil Code of 1913, paragraph 643, on filing of defendant's motion therefor, or to dismiss case because security was not given, *held* not erroneous, where delay in making order was due to fact that presiding judge was not present and could not act on motion at earlier date, and plaintiff obeyed order when made.

2. PLEDGES.—Pledgee, in exercising power of sale conferred by agreement, must do so in all good faith toward pledgor.

3. PLEDGES — COMPLAINT, IN ACTION TO RECOVER VALUE OF NOTE PLEDGED AS COLLATERAL AND SOLD BY PLEDGEE, HELD TO STATE CAUSE OF ACTION AS AGAINST GENERAL DEMURRER.—Complaint, in action to recover value of note pledged as collateral for another and sold by pledgee, showing that pledgee sold to itself at private

sale collateral worth $2,000 plus for $400, that it did not notify pledgor that it was advertising collateral for sale, and that prior to sale pledgee falsely informed pledgor that collateral had already been sold, *held* to state cause of action as against general demurrer.

4. EVIDENCE—ADMITTING IN EVIDENCE LETTER IN ANSWER TO PLEDGOR'S TELEGRAM HELD NOT ERROR, WHERE IT APPEARED THAT WRITER OF LETTER WAS AUTHORIZED BY DEFENDANT PLEDGEE'S PRESIDENT TO WRITE IT.—In suit to recover value of note pledged as collateral for another and sold by pledgee bank, admitting in evidence letter from another to pledgor in answer to his telegram inquiring status of his note and collateral, *held* not error where it appeared that writer of letter was authorized by pledgee's president to write it.

5. PLEDGES.—Sale of note pledged as collateral for another, which was neither public nor private, though offer was to public and to highest bidder *held* ineffective to pass title, where no notice of sale had been given and no attempt to sell at private sale was ever made.

6. BANKS AND BANKING. — Where pledge empowered pledgee bank to sell note pledged as collateral for another at public or private sale, and bank chose to make sale public, it was required to conform to Civil Code of 1913, paragraph 4143, ·governing public sales.

7. PLEDGES.—Sale of note pledged as collateral for another at public sale under Civil Code of 1913, paragraph 4143, *held* ineffective to pass title where pledgee failed to notify pledgor.

8. PLEADING—DENIAL THAT NOTE WAS OF VALUE OF $2,000 ALLEGED HELD NEGATIVE PREGNANT. — In suit to recover value of note pledged as collateral for another which pledgee sold, answer denying that note was of value of $2,000 alleged *held* to be but negative pregnant and not to put value in issue.

---

See (1) 15 **C. J.**, p. 210, n. 89.   (2) 31 **Cyc.**, p. 877, n. 72, p. 878, n. 75.   (3) 31 **Cyc.**, p. 878, n. 74, p. 879, n. 94, p. 881, n. 9. (4) 31 **Cyc.**, p. 881, n. 9.   (5) 31 **Cyc.**, p. 883, n. 36.   (6) 31 **Cyc.**, p. 879, n. 86 New.   (7) 31 **Cyc.**, p. 874, n. 51.   (8) 31 **Cyc.**, p. 204, n. 44, 46.

APPEAL from a judgment of the Superior Court of the County of Pima. W. R. Chambers, Judge. Affirmed.

### STATEMENT OF FACTS.

W. W. Jones borrowed from the Co-operative Bank & Trust Company, on June 13, 1923, $350, and gave

his ten-day note bearing ten per cent interest, and as security for its payment deposited with the payee as collateral a note of E. L. Anderson and wife for $2,000, payable to himself in eighteen months from June 4, 1923.

This action was instituted by Jones against the Co-operative Bank & Trust Company and W. P. Dunn, its president, to recover the face value of collateral note, less his note and interest. After the action was begun, the pledgee's name was changed to United Bank & Trust Company and W. P. Dunn died. Proper orders of substitution of the executrix and the pledgee under its new name were made. The plaintiff's note and collateral agreement were set out in the complaint, being in words and figures as follows:

"Collateral Note.

"Tucson, Arizona, June 13th, 1923.          $350.00.

"Ten days after date, without grace, for value received, I promise to pay to Co-operative Bank & Trust Company, Tucson, Arizona, the sum of three hundred fifty dollars, with interest at the rate of ten per cent, per annum from maturity until paid, interest payable at maturity, and if not so paid, to be compounded monthly, and bear the same rate of interest as the principal; and, should the interest not be paid when due, then the whole sum of principal and interest shall become immediately due and payable and may be charged to the account in said bank of either the principal maker, or sureties on said note, at the option of the holder of this note. Should an attorney be employed to collect, or should suit be commenced to enforce the payment of this note, I agree to pay 10 per cent. additional as attorney's fee. Principal and interest payable in gold coin of the United States.

"I hereby deposit with said bank, as collateral security for the payment of this or any other liability or liabilities of mine to said bank, due or to become due, or that may be hereafter contracted, the following property, viz.: Collateral note of E. L.

Anderson and wife to W. W. Jones for $2,000, payable in 18 months, the market value of which is now $2,000, with this condition, viz.:

"That Co-operative Bank & Trust Company, Tucson, Arizona, has the right to call for such additional security as it may deem proper, and, on failure to respond forthwith to such call, this obligation shall immediately thereupon become due and payable; and on the nonperformance of this promise, or on the nonpayment of any liability or liabilities above mentioned, the said bank, its president or cashier, or assigns, is and are hereby given full power and authority to sell, assign and deliver, or collect the whole or any part of the above-named securities, or any substitute therefor, or any addition thereto, at public or private sale, at any time or times hereafter, without any demand, advertisement, or notice, such demand, advertisement, and notice being hereby expressly waived; and upon such sale Co-operative Bank & Trust Company, Tucson, Arizona, or the holder hereof, may become the purchaser of the whole or any part of such securities, discharged from any right of redemption; and after deducting all legal or other costs and expenses for collection, sale and delivery, may apply the residue of the proceeds of such collection, sale or sales, to pay any, either or all of such liabilities as Co-operative Bank & Trust Company, Tucson, Arizona, or its assigns, shall deem proper, returning the overplus to the undersigned. And the undersigned agrees to pay the holder hereof any deficiency upon demand.

"[Signed] W. W. JONES.

"No. 3982.
"Due 6–23–23."

The complaint alleges that the collateral note was secured by a mortgage on eight blocks (except lots 1, 4 and 5, block 2) of Jones addition to the city of Tucson, Arizona, upon which was another mortgage of $5,000; that said real estate was at the time of the pledge, and at all times since, worth $25,000, and the pledged note was of the value of $2,000 plus interest; that on due date of his note plaintiff was not

in Arizona, and that he did not pay note; that between due date (June 23d) and July 23, 1923, defendants advertised for sale, and purported to sell, the collateral; that at such sale the defendants bid in such note for $400; that while the sale was advertised as public it was conducted privately; that defendants did not give plaintiff any notice of the sale; and that defendants, in response to plaintiff's request as to the status of his note and collateral, prior to such purported sale, had falsely and fraudulently represented that collateral had been sold, whereas in fact and in truth it had not been sold.

It is alleged the defendant applied the purported purchase price of $400 as follows: $352.50 to take care of plaintiff's note, which was mailed to plaintiff, together with a check of defendant Dunn, payable to plaintiff, for $47.50.

It is also alleged that plaintiff had tendered to defendant the check for $47.50 and $350 and interest to cover his note, and requested the return of collateral note, which tenders and request had been refused.

The defendants' answer consisted of a general demurrer, admission of the pledged contract as alleged, allegations that there was a first mortgage against the real estate described in complaint of $3,500, that collateral note was sold in accordance with agreement of parties in collateral contract, that defendant was the highest bidder for note, and that $400 was the highest and best bid offered, that the sale was conducted publicly and in good faith and with due regard to the interests of the plaintiff, denial that collateral note "was of the value of $2,000," or that the mortgaged real estate was worth $25,000, or that prior to the sale plaintiff requested of defendants any information regarding said note, or the sale thereof, or that defendants made any

misrepresentation of any kind, or at any time, in respect to the said sale.

The demurrer was overruled, and the case was tried before the court without a jury, resulting in a judgment of dismissal as to the executrix and in favor of plaintiff against the defendant bank in the sum of $1,837.50, being the difference between plaintiff's note and interest thereon and the collateral note and interest thereon at the time of the rendition of the judgment.

From this judgment and an order refusing a new trial the defendant has appealed.

Mr. William R. Misbaugh and Mr. Paul Cella, for Appellant.

Mr. Frank J. Duffy, Mr. M. L. Ollerton and Mr. Thomas J. Elliott, for Appellee.

ROSS, J. (After Stating the Facts as Above).— We will speak of the parties as designated in the lower court. The defendant assigns as error the court's failure to require plaintiff to give security for costs upon the filing of its motion therefor, and in refusing to dismiss the case upon its motion.

These motions are based upon paragraph 643 of the Civil Code, which provides in general terms that, if it be shown that the plaintiff is a nonresident or has not property out of which costs can be made, the court shall order that he give security for costs, and that for a failure to file such bond within ten days after the order for it the case shall stand dismissed.

On the motion for a new trial the learned trial judge in a written opinion summarized the facts concerning this assignment as follows:

"The motion to require plaintiff to give security for costs was filed February 28th, 1925. So far as I can find from the record, after February 28th, 1925,

the judge presiding in this case made no order in open court relating thereto until the 5th day of June, 1925. On the 2d day of March, 1925, the judge presiding directed a letter to Mr. M. L. Ollerton, of Phoenix, Arizona, of counsel for the plaintiff, in which it was stated that the defendant had filed an affidavit for cost bond. It was then contemplated that the case would be tried about March 13th to 16th. There is no way in which this letter of the judge can be construed as an order of the court to file a cost bond. It does not purport to be an order; it is nothing more than a direction to counsel for the plaintiff as to what the probable order will be, and it was considered unnecessary for the judge to make a special trip to Tucson from his home in Safford for the purpose of making this order. Moreover, if the letter did purport to be an order, it would be of no effect for the reason that it does not come within the provisions of chapter 38 of the Session Laws of the Sixth Legislature. The only order made upon the plaintiff to file a cost bond was made on June 5, 1925, and the cost bond was filed forthwith. I see no merit whatever in the contention that the case should have been dismissed for failure of the plaintiff to file cost bond.''

The statute does not provide that the court must, immediately upon the filing of a showing for the necessity, together with a motion to require it, make the order for a cost bond, but leaves that to the discretion and convenience of the court. The delay in making the order was due, it appears, to the fact that the judge who tried the case was not the local judge and· was not present and could not act on motion at an earlier date. The object of the statute is to protect the defendant in his costs and not to penalize the plaintiff for a delay that he did not cause and could not help. The plaintiff may await the court's order, however long delayed, and, if no order requiring him to give bond for costs is made, he is not bound to give one. If he obey the order when made, as plaintiff did, it would be error to

dismiss his case. *Miami Copper Co.* v. *Strohl,* 14 Ariz. 410, 130 Pac. 605; *Potter* v. *Kearney,* 26 Ariz. 409, 226 Pac. 212.

It is contended the facts set out in the complaint are insufficient to constitute a cause of action. In stating the allegations of the complaint, we have purposely omitted many adjectives employed by the pleader characterizing what defendant did as fraudulent and false, regarding them as surplusage in most instances. It is the acts of commission or of omission set out in the pleading as violative of defendants' duties as pledgee that do or do not give rise to a cause of action in favor of the pledgor or make a case of fraud. There is no question that the pledgee, in exercising the power of sale conferred by the agreement, must do so in all good faith towards the pledgor who has entrusted him with the power. The extent of his interest is to get out of the pledge what he has put into it, or what has been agreed he shall have, and when the event has happened authorizing him to sell for that purpose he may do so, but it must be a *bona fide* sale and not a colorable one merely. The confidence imposed in the pledgee must not be abused or arbitrarily or improvidently exercised without regard to the rights of the pledgor. It is said in *Foote* v. *Utah Commercial & Savings Bank,* 17 Utah 283, 54 Pac. 104:

"The sale must be fair, and the contract must be construed benignantly for the debtor's interest as well as that of the pledgee."

In *Montague* v. *Dawes,* 14 Allen (Mass.), 373, this very fair and reasonable rule was laid down:

"One who undertakes to execute a power of sale is bound to the observance of good faith and a suitable regard for the interests of his principal. He cannot shelter himself under a bare literal compliance with the conditions imposed by the terms of the power. He must use a reasonable degree of

effort and diligence to secure and protect the interests of the party who intrusts him with the power. A stranger to his proceedings, finding them all correct in form, and purchasing in good faith, may not be affected by his unfaithfulness. But whenever his proceedings can be set aside without injustice to innocent third parties, it will be done upon proof that they have been conducted in disregard of the rights of the donor of the power. When a party who is intrusted with a power to sell attempts also to become the purchaser, he will be held to the strictest good faith and the utmost diligence for the protection of the rights of his principal. If he fail in either, he ought not to be permitted thereby to acquire any irrevocable rights which he can set up against the party whose interests he has sacrificed.''

The complaint does show that at the time of the purported sale of the collateral by defendant the plaintiff's note was past due and that he was not in the state. It also shows that the collateral had a market value of $2,000, plus interest; that defendant, although advertising the collateral to be sold at public sale, conducted its sale privately, and at such sale bought it in for less than one-fifth of its actual value. In other words, that the pledgee sold to itself collateral worth $2,000 plus for $400, that it did not notify the plaintiff that it was advertising the collateral for sale, and, further, upon inquiry by the plaintiff prior to the sale as to the status of his note and collateral, the defendant falsely informed plaintiff the collateral had already been sold.

It seems to us that this presents a state of facts, if established by the evidence, which should entitle the plaintiff to recover, and that therefore the general demurrer was properly overruled.

It is claimed it was error to admit in evidence, over objection, a letter dated Tucson, June 28, 1923, by E. L. Anderson to plaintiff Jones in Los Angeles, in answer to a telegram from Jones inquiring the

status of his note and collateral; the objection being that Anderson was not shown to be an officer or agent of the defendants nor authorized by defendants to write such letter. This letter was not admitted until a letter dated Tucson, July 23, 1923, from Dunn, the president of the defendant bank, to Jones in Los Angeles, was introduced, in which appears this language:

"I had Mr. Anderson write you regarding the sale of this note, but we have not heard from you."

It being made to appear that Anderson was authorized by the bank's president to write the letter of June 28th, it was clearly admissible.

In the form of a demurrer to the evidence, at the close of plaintiff's case, defendant questioned its sufficiency to establish the allegations of the complaint. Treating it as a motion for judgment (the method employed in this jurisdiction) when there is a failure of evidence and the case is being tried before the court without a jury, we think it was very properly overruled.

It seems defendant went through the form of selling collateral twice. Two days after plaintiff's note fell due, the president of the defendant bank took the former's note and the collateral to the front door of the bank and "announced he would sell (collateral) to the highest bidder." He stated it was for $2,000, and was given to secure note of $350, given by plaintiff, Jones. He received no offer, and thereupon bid it in for defendant bank for the face value of the Jones note and accrued interest. The defendant, upon the advice of its attorney, however, abandoned this sale as ineffective to pass title. In this it is obvious it made no mistake. The sale was neither public nor private. While the offer was to the public and to the highest bidder, no notice of sale had been given; no attempt to sell at private sale was ever

made. Notwithstanding, when on the 28th of June plaintiff inquired as to the status of this paper and his note, Anderson, at the instance of Dunn, defendant's president, wrote plaintiff, who was in Los Angeles, as follows:

"Mr. Dunn informs me that he had already sold your note for $2,000 that you gave to secure the $350.00 note. . . . I inquired of him as to who bought the note, and he told me that was none of our business. . . . Upon pressing the matter, Dunn said the matter was closed, and as it now stands, someone owns our $2,000 note."

After causing this misinformation to be sent to plaintiff, on July 3, 1923, defendant bank commenced proceedings for a public sale, and on that day posted in three public places, in Tucson, notices of intention to sell collateral on July 20th, at 11 o'clock, at defendant's banking house, and caused said notice to be published in one issue of a local newspaper, the evident purpose being to comply with the statute requiring the pledgee, in all cases where the parties have not otherwise agreed in writing, to give such public notice for fifteen days prior to date of sale, and also personally to give the pledgor fifteen days' written notice of such sale. Paragraph 4143, Civil Code 1913. The defendants, as the record shows, fully complied with the statute in all particulars, except as to the giving of notice of proposed sale to plaintiff. Apparently no effort was made to comply with the law in that regard.

On July 20th, the hour not shown, in the lobby of the defendant bank, Mr. Dunn "offered it (collateral) for sale when people were passing in and out," and, there being no bids, he struck it off to the defendant for $400.

The agreement empowered the defendant bank to sell at public or private sale. It chose to make the sale public, and was therefore required to conform

to the statutory rules governing public sales. *Foote v. Utah Commercial & Savings Bank, supra.* It did not do it. It failed to notify the plaintiff, and we think, in view of the statement contained in the Anderson letter to plaintiff, to the effect that the collateral had already been sold, there was every reason, aside from the legal one, that notice of sale should have been given the plaintiff.

It is next contended that the damages were excessive. The court took evidence on that question which was conflicting, the plaintiff testifying that it was worth its face value and two or three others stating that it was worth no more, or worth less, than the $400 paid. The trial court found the value to be as claimed by the plaintiff. We think this finding is well supported by the evidence and also the pleadings. The collateral contract itself recites that "the market value" of the note "is now $2,000." The defendants' answer does not put this value in issue. Its denial was in these words:

"Deny that the said note was of the value of $2,000. . . . Deny that the collateral note for $2,000 . . . was, at the times set forth, of the value of $2,000. . . ."

These denials are perfect negative pregnants; they are admissions that the note might have been worth $1,999, or worth more than $2,000.

It was shown at the trial that defendants had collected the face of collateral note, together with interest.

We are satisfied that the trial court committed no error, and that the judgment should be affirmed. It is accordingly so ordered.

McALISTER, C. J., and LOCKWOOD, J., concur.