213 P.2d 684

**HAYNIE et ux. v. TAYLOR et al.**
No. 5084.

Supreme Court of Arizona.
Jan. 23, 1950.

W. Shelley Richey and Norman S. Herring, of Douglas, attorneys for appellants.

David J. Marks and Wesley E. Polley, of Bisbee, attorneys for appellees.

PHELPS, Justice.

In the year 1939 Dan H. Taylor and Ralph Schupbach, hereinafter called by their surnames, were the owners as tenants in common of Chance Claims Nos. 1, 2, 3 and 4 in the Swisshelm mining district, Cochise County, Arizona. Ether Haynie, one of the plaintiffs herein, who will hereinafter be called Haynie, was the lessee of the Scribner group of mining claims adjoining the Chance Claims on the west. There were no usable shafts on the Scribner Claims but there were two shafts on the Chance Claims known as the old or lower shaft and the new or upper shaft in sufficient proximity to the Scribner Claims to enable Haynie to work such claims through one of these shafts by digging a tunnel of about 300 feet over to the side line of the Chance Claims and to a point on the Scribner Claims known as the well drill hole. Haynie had previously bored the well drill hole on the Scribner Claims and had encountered a body of ore which he believed to be of commercial value.

On the 19th day of December, 1939, Haynie entered into a written contract of lease with Taylor for the lease of the Chance Claims. In this lease Haynie agreed to sink what was known as "the old shaft" 40 feet deeper and to run a tunnel from the bottom of said shaft over to the Scribner Claims for which Taylor agreed to convey by sufficient deed, a one-third interest in the Chance Claims. Taylor testified that he had purchased Schupbach's interest in the Chance Claims and on the date of the lease was the sole owner thereof. Schupbach denied this on the witness stand and said that he was then the owner of an undivided one-half interest therein. We consider this question immaterial however.

Haynie entered upon the claims and began to sink the old shaft deeper but encountered so much water and the shaft was so dangerous that he could not successfully carry out the terms of his written lease agreement. He and Taylor, during the month of March, 1940, orally agreed, however, that Haynie might run the drift or tunnel from the 116-foot level in the old shaft over to the well drill hole on the Scribner Claims and to sink the upper shaft 40 feet deeper instead of continuing to work on the lower shaft. The tunnel was necessary to Haynie's operation of the Scribner Claims in order to enable him to convey his ore from the Scribner Claims to the old shaft on the Chance Claims and there to bring it to the surface. The new upper shaft had approximately a 30 feet higher elevation at the collar than the lower shaft and was about 240 feet north of the old shaft. There is a sharp conflict in the evidence as to whether the work agreed to be done under the oral agreement was in lieu of that provided to be done under the written lease agreement or was in addition thereto as will be hereinafter more fully pointed out.

Haynie ran the drift from the 116-foot level in the lower shaft over to the Scribner Claims and took out large quantities of ore from those claims as was anticipated. The drift or tunnel and development work definitely developed the fact that the body of ore on the Scribner Claims dipped to the east under the Chance Claims which greatly enhanced the value of the Chance Claims. Haynie dug the upper shaft about 53 feet deeper than it originally was when he entered upon the performance of the written lease agreement of December, 1939. Under direction of the State Mine Inspector he also extended the drift to the upper shaft, thus connecting the two shafts with the tunnel.

In September, 1943, the owner of the Scribner Claims terminated Haynie's lease and he moved such equipment as he had in use and which was loose, away from the Chance Claims leaving only certain other heavy personal property which was fastened to the ground or not easily moved away.

He discontinued work on the Chance properties at that time and he together with

342

his employees left the premises and according to Haynie's testimony at the trial he has not returned to the property since that time. He did not notify Taylor he had completed his contract nor did he demand conveyance of his one-third interest in the Chance Claims.

In 1944 Taylor and Schupbach leased the Chance Claims to one R. L. Brown to enable him to further develop and extract ore from the Scribner Claims and early in 1945 defendants J. F. Rydbom, E. E. Rydbom and E. R. Bryant hereinafter called lessees, entered into a sublease agreement with Brown. During the same year they entered into a lease agreement with Taylor and Schupbach for the Chance Claims and immediately began work developing and extracting ore therefrom. Prior to the filing of this cause of action by Haynie the lessees expended more than $50,000 in operating and developing the Chance Claims and extracted many carloads of commercial ore therefrom which they sold to the American Smelting and Refining Company of El Paso.

Haynie knew of these operations but did nothing to assert his rights and said nothing about it to Taylor or Schupbach or to the lessees. In April, 1947, however, he brought this action against Taylor and Schupbach, owners, the Rydboms and Bryant as lessees, and the El Paso Smelting and Refining Company to whom the ore from the claims had been shipped, seeking various kinds of relief under four separate causes of action. On appeal to this court,

however, Haynie abandoned all of his claims against defendants except his claim for an accounting against the lessees or damages for trespass and conversion as the facts might warrant and for specific performance of his contract with Taylor for an undivided one-third interest in the Chance Claims. It is the claim of Haynie that Taylor was acting as the agent of Schupbach in executing the written lease agreement of December, 1939, and in making the subsequent oral agreement of March, 1940, here in question. Defendants in their pleadings denied generally the allegations on which Haynie's claims are based and plead the Statute of Frauds, A.C.A. 1939, § 58-101 et seq., the Statute of Limitations and an equitable estoppel as a bar to recovery.

A jury was demanded and the cause proceeded to trial. The court at the beginning of the trial granted a motion to dismiss as against the American Smelting and Refining Company. At the close of plaintiff's case, defendants presented to the court a number of propositions of law in support of their claim that the case in its entirety should be withdrawn from the jury. The court referred to this argument as "a Motion for a directed verdict in all counts," and by its ruling took the case away from the jury and entered judgment for defendants.

From the judgment and from the order denying the motion for a new trial Haynie appeals to this court.

He presents six separate assignments of error for our consideration which when boiled down resolve themselves into only two propositions of law:

1. That the court erred in denying Haynie specific performance of his oral contract with Taylor and in basing said denial upon the ground that the contract (a) violated the Statute of Frauds, (b) was barred by the Statute of Limitations, (c) Haynie had an adequate remedy at law through monetary compensation for the work he performed.

2. The court erred in denying plaintiffs a judgment against lessees either for damages based upon the trespass and conversion or for an accounting as cotenants.

Haynie predicated his assignments largely upon the contents of a written document filed with the trial judge in which the court announced its decision and ordered the entry of judgment.

Defendants contend that this document is only a memorandum opinion and therefore under the rule in Ollason v. Glasscock, 26 Ariz. 193, 224 P. 284, such document cannot be considered by this court on appeal.

We reaffirm the rule in the Ollason case but call attention to the fact that the document here in question is more than an opinion. In it is found the order and judgment of the court. In it the court definitely makes findings of fact and conclusions of law which bear none of the indicia of an opinion.

For example on the first page of the document in the last paragraph thereof the court says:

"Under the facts in the present case the plaintiff under the alleged oral contract performed certain labor, services *and undoubtedly improvements to the Chance Mine, by sinking a shaft and certain drifts in accordance with the said oral contract by and with the consent of the defendant* Dan Taylor; * * *" (Emphasis supplied.)

On the second page of said document in next to the last paragraph the court finds that "there is nothing inherently difficult or uncertain in establishing the value of services and labor performed by plaintiff," thus finding that Haynie had an adequate remedy at law, and in the last paragraph thereof the court concludes as a question of law:

" * * * that the oral agreement comes within the Statute of Frauds and is unenforcable; * * * and that the action comes within the three year period of limitations and not having been filed within that period is barred * * *." The court made other findings of fact and conclusions of law relative to the other causes of action which are here immaterial because of having been abandoned.

It will be observed that in the document filed by the court, which defendant denominates an opinion, the findings of fact and conclusions of law therein form the basis for the judgment rendered. We hold that such findings of fact and conclusions

344

of law constitute a proper subject of consideration by us in determining the issues presented under the assignments of error, as much so as if such findings of fact and conclusions of law had been so designated by the court, or filed in a separate instrument. We are unable otherwise to reach any logical conclusion upon what ground the learned trial judge withdrew the case from the jury. At the time the court withdrew the case from the consideration of the jury there existed controverted issues of fact to be determined which were material to a proper disposition of the cause of action.

Let us see what was required of Haynie under his written contract of lease of December 19, 1939, as modified or as novated (as claimed by Haynie) by the oral agreement of March, 1940.

The written contract of December 19, 1939, simply provided that Taylor would deed to Haynie a one-third interest in and to the Chance Claims when Haynie did the following work:

"* * * go down an additional 40 feet with the present shaft (the old or lower shaft) on the said mining claims and when said shaft has been completed said additional 40 feet in depth, to run a drift about 300 feet in a southwesterly direction to the west line of the said Chance Mining Claims to a place near the 'well drill hole.'" We construe this to mean that the old shaft under this agreement was to be sunk 40 feet deeper than it then was and that after reaching the prescribed depth the 300-foot drift should be run from the bottom of said shaft over to the point designated in the written agreement.

Both Haynie and Taylor testified, that because of adverse conditions found in the old shaft it was agreed between them in March, 1940, that the drift should be run from the old shaft on the 116-foot level to the point designated in the written contract; that Haynie could discontinue sinking on the old shaft and instead sink the new or upper shaft an additional 40 feet deeper. Haynie claims that this work was to be done in lieu of that which was provided to be done under the written lease agreement and that he had fully performed his part of his contract with Taylor. It is claimed by Taylor on the other hand that the oral agreement did not and was not intended to release Haynie from a strict performance of the written contract; that the oral agreement was for the benefit of Haynie to enable him to develop and extract ore from the Scribner Claim and convey it to the surface through the tunnel and up the old shaft located on the Chance Claims; that Haynie then orally agreed to later return and sink the old shaft an additional 40 feet and then drift over to the Scribner Claims below the water level. Taylor's version of the oral agreement suggests to us the following query: If the oral agreement provided that Haynie should return to the old shaft and sink it an additional 40 feet why was Haynie required to do any work at all on the upper shaft? Sinking it

an additional 40 feet or 53 feet certainly was of no benefit to Haynie in developing the Scribner Claims.

The court found as a fact that "under the alleged oral agreement Haynie had performed said labor, services and undoubtedly improvements to the Chance Mine by sinking a shaft and certain drifts *in accordance with the said oral contract* by and with the consent of the defendant Dan Taylor". (Emphasis supplied.)

■ If the work was done in accordance with the oral contract then it amounts to a finding by the court that Haynie fully performed at least that portion of the oral contract relating to sinking the shaft and drifting 300 feet in a southwesterly direction, and if Haynie testified truthfully, it constitutes a full and complete performance of his entire contractual obligations to Taylor. Under all the decisions of this court if Haynie fully and completely performed his part of the oral contract he was entitled to specific performance thereof as against Taylor but not against Schupbach and to a conveyance of a one-third interest in the Chance Claims by Taylor. Murphy v. Smith, 26 Ariz. 394, 226 P. 206; Sullivan v. Townsend, 30 Ariz. 63, 243 P. 913; 37 C.J.S., Frauds, Statute of, § 251, page 762; Condon v. Arizona Housing Corporation, 63 Ariz. 125, 160 P.2d 342. If the above premise is correct the court in denying specific performance against Taylor committed reversible error. The estate of a cotenant is separate in character and may be alienated without the consent of the other cotenants. Taylor owned a one-half interest in the Chance Claims. After a conveyance of a one-third interest to Haynie he would still have remaining a one-sixth interest therein.

■ If on the other hand the oral agreement provided as claimed by Taylor that Haynie was to return and sink the old shaft an additional 40 feet and then run the drift from the lower level to the point designated, Haynie had only partly performed his contract. Under such circumstances he would be entitled to specific performance if the evidence showed (a) that he had made valuable improvements on the land, or (b) had taken possession thereof and also had paid a portion of the purchase price. Latimer v. Hamill, 5 Ariz. 274, 52 P. 364; Condon v. Arizona Housing Corporation, supra. This is true, provided, of course, he did not have an adequate remedy at law.

The trial court specifically found that Haynie had made valuable improvements on the Chance Claims and the evidence amply supports this finding. The evidence is also undisputed that Haynie went into possession of the mining claims in 1939 and remained in possession until September 1943. Therefore, under the rule laid down in Condon v. Arizona Housing Authority, supra, he is entitled to specific performance of the oral contract with Taylor of March, 1940, on the ground of part performance unless he had an adequate remedy at law, that is, unless the work he did on the property and the improvements he made are

susceptible of measurement in dollars and cents so that Haynie may be adequately compensated therefor, or unless Haynie is estopped to enforce specific performance.

We glean from the records that the trial court denied specific performance because it found that Haynie had an adequate remedy at law for the reason that the value of the work performed and improvements made could be easily ascertained and Haynie adequately compensated therefor. We are of the opinion that the evidence introduced does not reasonably sustain this finding. We base this conclusion upon the fact that in addition to the sinking of the shaft and boring tunnels (the latter being approximately 500 feet in length) Haynie definitely established the existence of a valuable body of ore under Chance Claim No. 1 which Taylor admitted enhanced the value of the Chance Claims.

We believe the added value of the Chance Claims made so by reason of the establishment of the fact that there existed a valuable ore body under said claims is incapable of measurement in money and that the partial performance by Haynie entitled him to a judgment of specific performance under the rule in the Condon case unless he is estopped from asserting such right as alleged in the answers of defendants. The question of estoppel seems not to have been considered by the court in arriving at its judgment.

The court was in error in finding as a conclusion of law that the action for specific performance was barred by the Statute of Limitations. This action falls under section 29-205, A.C.A.1939, and is a four-year statute. The records show that the cause of action in the instant case arose in September, 1943, and plaintiffs' complaint was filed in April 1947.

It will not be necessary to discuss the other questions raised in view of the fact that the case must be reversed for the reasons above stated. If upon a retrial of the case it is found that Haynie is not entitled to specific performance of the oral contract, upon the ground of estoppel his cause of action against the lessees for damages or for an accounting must also fall.

For the guidance of the trial court in a retrial of this case, we hold that in the trial of equity cases where a jury has been demanded, the court may not withdraw the determination of controverted facts from the jury and that the case may only be withdrawn from their consideration where there is no controverted issue of fact, in other words, only in cases where if it were an action at law the court would be required to direct an instructed verdict. Security Trust & Savings Bank v. McClure, 29 Ariz. 325 at 333, 241 P. 515; Ainsworth v. National Bank of Ariz., 33 Ariz. 466 at page 472, 266 P. 8; Light et al. v. Chandler Improvement Co., 33 Ariz. 101, see pages 103 and 106, 261 P. 969, 57 A.L.R. 107; Stukey v. Stephens, 37 Ariz. 514, 295 P. 973; Rundle v. Winters, 38

Ariz. 239, 298 P. 929; Greer v. Goesling, 54 Ariz. 488, 97 P.2d 218; Brooks v. Brooks, 60 Ariz. 119, 132 P.2d 431. It is true that in the case of Stephens v. White, 46 Ariz. 426, 51 P.2d 921, this court held that the trial court may withdraw controverted issues of fact from the consideration of the jury in equity cases but cited no authority whatever in support thereof. The court stated in that case that the cases above cited made it optional with the trial court whether it should submit controverted issues of fact to the jury in such cases. A careful study of the cases does not warrant that assertion but on the contrary all of the above decisions state in substance that it is the duty of the court to listen to the advice of the jury in equity proceedings no matter whether it is followed or not. The case of Stephens v. White, supra, decided in 1935 was by implication overruled in 1939 in the case of Greer v. Goesling, supra. In the latter case the court expressly held that controverted issues of fact must be submitted to the jury but made no reference to Stephens v. White, supra. In the case of Stewart v. Schnepf, 62 Ariz. 440, 158 P.2d 529, this court quoted an excerpt from Stephens v. White to the effect that controverted issues may be withdrawn from the jury and determined by the court but such quotation was not necessary to the decision of that case. The sole question in the latter case was whether the trial court was compelled to submit interrogatories requested by one of the parties litigant in addition to interrogatories which

the court had presented. In that case all the controverted issues were presented to the jury by interrogatories and this court held that this being true the trial judge was not required to submit additional interrogatories.

For the reasons above stated it is ordered that the case be reversed with instructions for a new trial in accordance with the views herein expressed.

LA PRADE, C. J., and UDALLL, STANFORD, and DE CONCINI, JJ., concur.