242 P.2d 557

LANE et ux. v. MATHEWS.
No. 5488.

Supreme Court of Arizona.
March 31, 1952.

Nasib Karam, of Nogales, for appellants.
Norman Herring, of Tucson, for appellee.

STANFORD, Justice.

This action arose out of the alleged breach of the conditions and undertakings of a farm lease. E. C. Lane and Millie Lane, appellants and defendants below, hereinafter styled lessors, own a farm near McNeill, Arizona. Sometime during the month of February, 1948, Bob Mathews, appellee and plaintiff below, hereinafter styled lessee, entered into negotiations with lessors to lease the farm on a percentage basis of the crop grown. The terms to be incorporated in the written lease were dis-

cussed by the parties at the farm in the presence of J. M. Jessen, lessors' attorney, who resides and practices law in California. Jessen made a written memorandum of the terms agreed upon and on his return to California drew up the lease and mailed three copies to lessors, two of which were to be signed by the respective parties. Lessors read the lease and then, without signing it, delivered the lease to lessee for his signature. Lessee, who can neither read nor write, had the agreement read to him. Not being satisfied with the terms thereof, lessee took the agreement to Alfred Putts, his financial backer, for inspection. Putts and lessee took the lease to Lloyd Helm, a Douglas attorney, and had the last page changed to embody the terms and conditions which they contend had been agreed upon. Helm's secretary removed the original last page, number seven, and substituted the new page seven embodying the changes. The secretary also copied the secretarial marks on the new page as they appeared on the original six pages of the lease, i. e., JMJ:MSJ and the date 3/16/48, which was also on the original six pages. Lessee then signed the lease and returned it to lessors without notifying them of the changes which had been made. Lessors did not re-read the lease before signing it but stated that they checked the pages noting the identifying marks on the bottom. After so inspecting the lease they signed it before a notary public in California.

Lessee brought this action for damages to the cotton crop as a result of lessors' refusal to keep the water pumps and engines in good repair as they were required to do under the terms of the written lease as changed by lessee. Due to lack of irrigation, approximately 200 acres of cotton were damaged. Lessors answered and counterclaimed praying for reformation of the agreement and for damages to their farm machinery. Their defense was fraud or mutual mistake. The trial was before a jury in two phases, the first, on the issues of fraud or mutual mistake, and the second on the question of the breach of the lease. The court instructed the jury to return a verdict in favor of the lessee on the issue of mutual mistake and submitted the following interrogatories on the issue of fraud:

"Did E. C. Lane and Millie Lane know that the last page of the farm lease had been changed before they signed it?"

Answer—No.

"If your answer to the above interrogatory numbered one (1) is no, then: did E. C. Lane and Millie Lane act as reasonably prudent persons in failing to read the last page of the Farm Lease?"

Answer—Yes.

"Under the instructions of the court, did E. C. Lane and Millie Lane sign and execute the farm lease as the result of fraud on the part of Bob Mathews?"

Answer—No."

At this point in the trial the lessors moved for judgment on the answers to the interrogatories claiming the answers established mistake on their part and fraud or inequitable conduct on the part of the lessee. The court denied the motion and ordered the trial to proceed on the question of the breach. The jury rendered a verdict in favor of lessee in the sum of $11,500 and further found in favor of lessee and against lessors on lessors' counterclaim. Lessors now prosecute this appeal.

The issue to be determined is whether reformation is allowable in view of the fact that the answers to the interrogatories established that lessors were not negligent and acted as reasonable and prudent persons in signing the lease without re-reading it. It is elementary that equity will reform an agreement where there is mutual mistake or mistake on one side and fraud or inequitable conduct on the other.

"A written instrument may be reformed where there is a mistake on one side and fraud or inequitable conduct on the other, as where one party to an instrument has made a mistake and the other knows it and conceals the truth from him. Some cases distinctly state that a court of equity can reform instruments in but two cases, namely, where there is mutual mistake and where there is a mistake of one party accompanied by fraud or inequitable conduct of the other. * * *" 45 Am.Jur., Reformation of Instruments, Sec. 62, page 621.

Fraud or inequitable conduct is defined in 45 Am.Jur., Reformation of Instruments, Sec. 57, page 619, from which we quote: "Fraud practiced in drawing and executing an instrument so that it does not speak the real terms of the contract which the parties have agreed on, or unconscionable conduct amounting to fraud, constitutes ground for a reformation of the instrument, if it is essential to protect from injury the innocent party thereto. The fraud which will entitle a party to relief is fraud at the time of execution of the instrument and not in a subsequent and distinct transaction. If the misrepresentation is prejudicial, it is of no importance whether it was wilful or accidental. Whether the deviation from the agreement entered into is the result of intentional or unintentional misstatement is immaterial, for equity has power to grant relief by way of reformation in one case as well as the other."

It is true, as lessee points out, that he made no affirmative representation, false or otherwise, concerning the lease to lessors. It will be seen, however, that mere silence may amount to a false representation in the proper case. We quote from 37 C.J.S., Fraud, § 16, pages 244, 245: "An exception to the rule that mere silence is not fraud exists where the circumstances impose on a person a duty to speak and he deliberately remains silent. It is well settled that the suppression of a material fact which a party is bound in good faith to disclose is equivalent to a false representation. Where

the law imposes a duty on one party to disclose all material facts known to him and not known to the other, silence or concealment in violation of this duty with intent to deceive will amount to fraud as being a deliberate suppression of the truth and equivalent to the assertion of a falsehood. The concealment of a fact which one is bound to disclose is an indirect representation that such fact does not exist, and constitutes fraud. A similar rule has in some jurisdictions been affirmed by express statutory provisions. Whether a duty to speak exists in a given case is a question depending on the peculiar facts involved. * *"

This court, in Batty v. Arizona State Dental Board, 57 Ariz. 239, 112 P.2d 870, 877, stated that: "Fraud may be committed by a failure to speak, when the duty of speaking is imposed, as much as by speaking falsely."

We believe that a duty to speak was imposed upon lessee when he undertook to change the terms of the agreement. His silence amounted to a representation that the lease had not been changed. The jury found lessors were not negligent in failing to re-read the lease under this set of circumstances. The evidence in this case clearly shows that there was mistake on one side and constructive fraud or inequitable conduct on the other. We believe lessors have established grounds for reformation, but have they clearly and convincingly shown the true agreement? The court erred in not submitting that all important question to the jury. In the trial of equity cases where a jury has been demanded, the court may not withdraw the determination of controverted facts from the jury. Haynie v. Taylor, 69 Ariz. 339, 213 P.2d 684. We must assume that the trial court found that lessee's interpretaion of the true agreement was correct, otherwise the court would not have ordered the trial to proceed on the issue of the breach of that written agreement. Reformation may be granted only when the party seeking reformation has established the grounds and clearly and convincingly proven the true agreement. The basic issue before the lower court in the first phase of the trial was the determination of the true agreement between the parties. This issue was not submitted to the jury for their determination and we hold this was reversible error.

Lessors contend that the court erred in not submitting the issue of mutual mistake to the jury. We find no merit in that contention. Although the jury found mistake on the part of the lessors, a study of lessee's testimony discloses his full knowledge of the changes that were made in the agreement before he signed it. The mistake, therefore, was not mutual. There were no controverted questions of fact on the issue of mutual mistake.

Judgment reversed and remanded for a new trial.

UDALL, C. J., and PHELPS, DE CONCINI, and LA PRADE, JJ., concurring.