399 P.2d 711

**CASHION GIN COMPANY, an Arizona Corporation, Appellant,**

v.

**Alex A. KULIKOV and Frances Kulikov, his wife, Roy A. Kulikov, also known as Roy A. Kulikoff, a bachelor, W. W. Valor and Mary Valor, his wife, Appellees.***

**No. I CA–CIV 4.**

Court of Appeals of Arizona.

March 9, 1965.

* This appeal was filed with the Arizona Supreme Court and assigned that Court's Number 7399. The matter was referred to this Court pursuant to Section 12–120.23 A.R.S.

Kenneth Biaett, Phoenix, for appellant.

Kramer, Roche, Burch & Streich, by Daniel Cracchiolo and Mark I. Harrison, Phoenix, for appellees W. W. Valor and Mary Valor, his wife.

STEVENS, Chief Judge.

This case relates to a claimed fraudulent conveyance within the purview of Arizona Uniform Fraudulent Conveyance Act. The pertinent parts of the act are set forth in the footnote.[1] The case was tried to the

---

1. Arizona Revised Statutes
"§ 44–1001 Definition of terms
In this article:
1. "Assets" of a debtor means property not exempt from liability for his debts. To the extent that any property is liable for any debts of the debtor, such property shall be included in his assets.
2. "Conveyance" includes every payment of money, assignment, release, transfer, lease, mortgage or pledge of tangible or intangible property, and also the creation of any lien or incumbrance.
3. "Creditor" is a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent.

4. "Debt" includes any legal liability, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent.
§ 44–1002 Insolvency:
A. A person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured.
§ 44–1003 Fair consideration:
Fair consideration is given for property, or obligation:
1. When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is con-

court sitting with a jury. At the close of the plaintiff's case the court directed a verdict against the plaintiff and in favor of the defendants appearing in the trial court. This appeal followed.

Cashion Gin Company, the plaintiff-appellant, loans money to finance the growing of cotton. Alex A. Kulikov and Frances Kulikov, his wife, were cotton growers and residents of Arizona. They borrowed money from the Cashion Gin to finance the growing of cotton on land which they were buying on contract being the land which is the subject of this suit. At the time in question the land had not been fully paid for. The purchase contract was properly recorded. The deed which was to be delivered and recorded upon the making of the final payment under the contract was held in escrow by the collection agent.

In 1951 Stewart (not a party to the suit) sold the land in question to Sanders (not a party) by contract. Stewart thereafter transferred his seller's interest to Campbell (not a party) who in turn transferred the same interest to Bell (not a party). On February 20, 1956 Sanders entered into a contract to sell the buyer's interest to Mr.

veyed or an antecedent debt is satisfied, or

2. When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

§ 44–1004 Conveyances by insolvent:
Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

§ 44–1006 Conveyances by a person about to incur debts:
Every conveyance made and every obligation incurred without fair consideration when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors.

§ 44–1007 Conveyance made with intent to defraud:
Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors.

§ 44–1009 Rights of creditors whose claims have matured:
A. Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser:

1. Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim, or

2. Disregard the conveyance and attach or levy execution upon the property conveyed.

B. A purchaser who without actual fraudulent intent has given less than a fair consideration for the conveyance or obligation, may retain the property or obligation as security for repayment.

§ 44–1010 Rights of creditors whose claims have not matured:
Where a conveyance made or obligation incurred is fraudulent as to a creditor whose claim has not matured he may proceed in a court of competent jurisdiction against any person against whom he could have proceeded had his claim matured, and the court may:

1. Restrain the defendant from disposing of his property,

2. Appoint a receiver to take charge of the property,

3. Set aside the conveyance or annul the obligation, or

4. Make any order which the circumstances of the case may require.

§ 44–1011 Cases not provided for in this article:
In any case not provided for in this article the rules of law and equity including the law merchant, and in particular the rules relating to the effect of principal and agent, and the effect of fraud, misrepresentation, duress or coercion, mistake, bankruptcy or other invalidating cause shall govern.

§ 44–1012 Construction of article:
This article shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it.

§ 44–1013 Name of article:
This article may be cited as the Uniform Fraudulent Conveyance Act."

and Mrs. Kulikov and later Sanders transferred the balance of Sanders' equity to Bell. On January 10, 1958 the principal unpaid balance in relation to the contract obligation of Mr. and Mrs. Kulikov was $6,405.00.

Roy A. Kulikov is the bachelor brother of Alex A. Kulikov. Mary Valor is the sister of Alex A. Kulikov and of Roy A. Kulikov and the wife of W. W. Valor.

By this action, which was filed on May 29, 1959, Cashion Gin seeks to set aside the transfer of the buyers equity from Mr. and Mrs. Alex A. Kulikov to Roy A. Kulikov as well as a later transfer from Roy A. Kulikov to Mr. and Mrs. Valor. The buyers equity under such a contract is capable of legal transfer and no legal issue is presented in relation to the fact of the technical legal capacity of a buyer to transfer such equity.

In the trial court Mr. and Mrs. Alex A. Kulikov filed their answer which was verified by Alex A. Kulikov. The file before this Court reflects that Roy A. Kulikov was served and that his default was entered. The record does not disclose that he was present in court at the time of trial. He is not a party to this appeal. This Court expresses no opinion as to the legal effect of the service of process or as to the legal effect of this opinion in relation to Roy A. Kulikov.

Mr. and Mrs. Valor, through the services of their attorneys, filed their answer and contested the case in the trial court. Mary Valor was personally present at the trial. At the trial Mr. and Mrs. Alex A. Kulikov were represented by their attorneys. The record implies that neither Mr. nor Mrs. Alex A. Kulikov was personally present at the trial.

After the trial court directed the verdict against the plaintiff, judgment was entered thereon.

Judgment was also rendered in favor of Maricopa County and against Cashion Gin for jury fees. Cashion Gin then gave timely notice of appeal and served the same upon the trial court attorneys of record for Mr. and Mrs. Alex A. Kulikov and upon the attorneys for Mr. and Mrs. Valor. The Cashion Gin opening brief on the appeal was served upon the same attorneys. No brief was filed on behalf of Mr. and Mrs. Kulikov. Mr. and Mrs. Valor joined issue on the appeal. Under the circumstances of this case the unexplained failure of Mr. and Mrs. Alex A. Kulikov to participate in the appeal constitutes a confession of error. Mower v. Street, 79 Ariz. 282, 288 P.2d 495 (1955).

The controversy between Cashion Gin and Mr. and Mrs. Valor differs to some degree from the controversy between Cashion Gin and the defendants named Kulikov. Mr. and Mrs. Valor do not concede that the transfer from Mr. and Mrs. Alex A. Kulikov to Roy A. Kulikov comes within the purview of the Arizona Fraudulent Conveyance Act and they urge that even if it did, the estate which Mr. and Mrs. Valor acquired in the land cannot be attacked. The Valors urge that they paid a fair consideration and that they bought without actual fraudulent intent and without knowledge of any facts which would put them on notice as to any imperfection in the title which Roy A. Kulikov transferred to them. Cashion Gin urges that the position of Mr. and Mrs. Valor is not sustained by the evidence, that at least there is a jury question as to Mr. and Mrs. Valor and that the Valors can retain the property or an interest therein only as security for repayment pursuant to the provisions of Sub-section B of Sec. 44–1009. Cashion Gin urges that it did prove a fraudulent conveyance from Mr. and Mrs. Alex A. Kulikov to Roy A. Kulikov or that at least Cashion Gin made out a prima facie case good as against a directed verdict and sufficient to require that the case be submitted to the jury. Therefore, it becomes essential to examine the claimed fraudulent conveyance from Mr. and Mrs. Alex A. Kulikov to Roy A. Kulikov before we can examine the position of Mr. and Mrs. Valor.

- The trial raised several interesting evidentiary problems. The briefs of Cashion Gin question some of the trial court's rulings upon evidence. These rulings are not presented in such manner as to call for a decision by this Court in relation to the rulings. This decision is written based upon the matters which were received in evidence. The issues cannot be discussed without reference to the rulings. All matters in relation to rulings upon evidence are reserved for the consideration of the trial court upon the re-trial of this cause.

In late 1956 Alex A. Kulikov negotiated with Cashion Gin for a loan to finance the growing of the 1957 cotton crop on the land in question. In this connection Mr. and Mrs. Alex A. Kulikov executed two promissory notes, one on January 14, 1957 for $22,400 and one on May 8, 1957 for $6,125.00. At the time of the execution of the January 14th promissory note, they also executed a crop and chattel mortgage. These notes were in turn negotiated to a bank by Cashion Gin by which negotiation funds became available to Cashion Gin to finance the crop.

In late 1957 before the returns on the cotton crop financed by the above notes and mortgage were all computed and at a time when it could not be ascertained with certainty whether or not the 1957 crop would pay out, Alex A. Kulikov and Cashion Gin again talked about financing the cotton crop for the next year, the same to be planted on the same land being the land in question. These discussions proceeded into February and March of 1958 and the matter of a loan was finally approved about mid March 1958.

The 1957 cotton crop did not pay out and some time after the mid March 1958 approval for the new financing, Cashion Gin filed suit to collect the unpaid balance in relation to the 1957 crop, this being Civil Cause No. 99266. Cause No. 99266 was tried and on May 27, 1959 a judgment was entered in favor of Cashion Gin for principal, interest and attorneys fees in the overall sum of $20,450.34. In 1959, credits were applied to this judgment and at the time of

trial on June 1, 1961, the unpaid balance on the judgment including interest, was the sum of $18,746.95.

Going back to the financing of the 1958 crop, there was a loan application which was executed on February 27, 1958. The testimony established that loan applications are used in connection with the negotiating of the promissory notes in the matter of securing the money necessary for the financing of the crop. The typed loan application signed by Mr. and Mrs. Alex A. Kulikov was offered in evidence and an objection thereto was sustained. During the loan negotiations the fact of Mr. and Mrs. Alex A. Kulikov's ownership of the land in question as well as the indebtedness against it was discussed. The evidence disclosed that on March 19, 1958 a note for the 1958 financing was signed by Mr. and Mrs. Alex A. Kulikov. The note was offered in evidence and an objection thereto. was sustained.

Without the knowledge of Cashion Gin and on January 30, 1958 Mr. and Mrs. Alex A. Kulikov opened an escrow wherein they were the sellers and Roy A. Kulikov was the buyer of the property in question. The escrow recited a purchase price of $13,740 of which $6,405 was to be paid by assuming the outstanding balance on the contract. $7,335 was recited as having been paid directly to the seller. On March 24, 1958 Mr. and Mrs. Alex A. Kulikov acknowledged their signatures before a Notary Public on an escrow document designated as an assignment of their interest in the contract pursuant to which they were buying the property. In the mean time, and by quit claim deed, dated and recorded on March 21, 1958, Mr. and Mrs. Alex A. Kulikov quit claimed their interest in the property to Roy A. Kulikov. The County Recorder was directed to mail the recorded document to an address in Tolleson, Arizona. When certain escrow and title fees were paid, the escrow was closed and a deed, which was one of the escrow documents, acknowledged on March 24, 1958 was recorded on April 9, 1958 with instruc-

tions to the County Recorder to send the recorded instrument to Roy A. Kulikov at a California address. It is interesting to note that in the escrow file there is correspondence from the escrow holder to Roy A. Kulikov under date of March 21, 1958 which refers to a judgment of record against Mr. and Mrs. Alex A. Kulikov with Roy A. Kulikov's reply under date of April 2, 1958 to the effect that the title could show the judgment as an exception. The file is silent as to any suggestion as to a price adjustment.

In relation to the discussions leading up to the execution of the 1958 loan application and the subsequent promissory note, there was testimony which was not stricken that Mr. Alex A. Kulikov told Cashion Gin that the value of the land in question was $120,000. The testimony indicated that this figure was also inserted by Mr. Alex A. Kulikov in his longhand preliminary draft of the loan application. These longhand notes were transcribed by a Cashion Gin secretary and after Mr. and Mrs. Alex A. Kulikov signed the document so typed, the original notes were destroyed. It was this typed document which was offered into evidence and to which the objection was sustained as above noted.

Two appraisers testified as to the fair market value of the land as of the time of the 1958 loan. One fixed the fair market value of $75,000 and the other at $78,750.

The evidence indicated that after the recording of the deeds to Roy A. Kulikov, the defendant Alex A. Kulikov remained in possession of the land at least until April 1958.

On June 12, 1958 an escrow was opened with another title company wherein Roy A. Kulikov was the seller and Mr. and Mrs. Valor were the buyers, the escrow file reflecting a sale price of $18,000. We need not recite the details of this transaction. The original escrow instructions contemplate a June 20, 1958 closing date. The agreement of sale was not recorded until January 30, 1959 and the deed arising out of the escrow was not recorded until March 19, 1959. Mrs. Valor testified that the money was in fact paid by them and that the source of the funds was one or another form of savings. She further testified that they knew not that Alex A. Kulikov had ever held an interest in this land and that they knew not of any transaction between Mr. and Mrs. Alex A. Kulikov and Roy A. Kulikov. This evidence relates to Section 44–1009B, but is not a complete defense in the event that Cashion Gin establishes a conveyance in fraud of creditors between Mr. and Mrs. Alex A. Kulikov and Roy A. Kulikov.

There was evidence as to other debts owed by Mr. and Mrs. Alex A. Kulikov and evidence as to some additional assets owned by them, the net effect of which was that there was insufficient property owned by them to pay all these debts after they had divested themselves in the interest of the property in question. There was evidence that Cashion Gin learned of the transfer from Alex A. Kulikov to Roy A. Kulikov some two or three months after the fact of recording. The record implies that Cashion Gin learned of the Roy A. Kulikov—Valor transaction but the date of the acquisition of that knowledge was not established.

Cashion Gin negotiated the 1958 note to a bank. Notwithstanding these transactions, Cashion Gin continued to pay persons who furnished the necessities for the growing and maturing of the cotton crop, continuing to make such payments after learning of the transfer to Roy A. Kulikov, possibly after learning of the fact of a claimed interest by the Valors. Cashion Gin urges that it was its contract obligation to continue to finance the growing crop both in relation to the loan from the bank and in relation to the fact that persons furnishing necessities for the maturing of the crop relied upon Cashion Gin to complete the contract.

 With these showings the plaintiff rested its case. The defendants moved to amend their answer to setup an estoppel and the motion was granted. The trial court was not required to and did not make any specific findings. In our opinion the evidence presented was not sufficient to sustain the defense of estoppel. The tests for

estoppel have been discussed by the Arizona Supreme Court. In Holmes v. Graves, 83 Ariz. 174, 177, 318 P.2d 354, 356 (1957) the Court stated that there are three elements to an estoppel.

"It has three elements. First, acts inconsistent with the claim afterwards relied on; second, action by the adverse party on the faith of such conduct; third, injury to the adverse party resulting from the repudiation of such conduct."

In Knight v. Rice, 83 Ariz. 379, 382, 321 P. 2d 1037, 1038 (1958) the court quoted an earlier Arizona case as follows:

" ' * * * The essential elements of estoppel are that plaintiff, with knowledge of the facts, must have asserted a particular right inconsistent with that asserted in the instant action, to the prejudice of another who has relied upon his first conduct. * * * ' "

The Court is faced with the answers to the following questions:

■ Was the evidence which was received by the trial court sufficient to make out a prima facie case of a fraudulent conveyance from Mr. and Mrs. Kulikov to Roy A. Kulikov applying the tests set forth in the Arizona Fraudulent Conveyance Act?

If there was sufficient evidence and even though the trial court was of the opinion that the evidence did not establish a prima facie case of a fraudulent conveyance from Roy A. Kulikov to Mr. and Mrs. Valor, was the evidence such that it was not appropriate to direct a verdict in favor of Mr. and Mrs. Valor?

Were there sufficient facts presented to the trial court to require that the trial court submit the case to a jury even though this is an equity case?

These questions are answered in the affirmative.

■■ In the trial of a case under the Fraudulent Conveyance Act, it is not necessary for the plaintiff to prove actual fraud, the plaintiff need not prove the traditional nine elements of actual fraud. If actual fraud is shown, the plaintiff may have the advantage thereof. Linder v. Lewis, et al., 85 Ariz. 118, 124, 333 P.2d 286 (1958). In the event that the plaintiff proves a fraudulent conveyance within the meaning of the Act in relation to the conveyance or transfer from Mr. and Mrs. Alex A. Kulikov to Roy A. Kulikov then Sec. 44–1009B grants the plaintiff some relief as against Mr. and Mrs. Valor. In the event that the initial creditors—grantors, here Mr. and Mrs. Alex A. Kulikov, absent themselves from the trial, is the plaintiff precluded from introducing evidence which evidence is within the plaintiff's knowledge and which evidence would be admissible as against the initial alleged fraudulent grantor and which evidence is hearsay as to Mr. and Mrs. Valor, the subsequent grantees? We have not been cited cases on this matter nor have we found any directly in point. It is our opinion that the answer to this last question must be in the negative. To hold otherwise would be to place it within the power of the original fraudulent grantee to negate the right of recovery by the defrauded creditor thereby rendering the provisions of Sec. 44–1009 B impotent and of no value. These observations are important to the re-trial of this cause.

■ The attorneys for Mr. and Mrs. Valor objected to expert opinion relative to fair market value urging that the question of fair market value is not the ultimate test. It is true that fair market value is not the ultimate test. The statute used the terms "fair salable value", "fair equivalent therefore" and "fair consideration". As pointed out in the opinion in Neal v. Clark, 75 Ariz. 91, 94, 251 P.2d 903 (1952) the matter of money consideration and its relation to fair market value is not the only consideration, there can be others as well. Many of these matters are defensive matters once a prima facie case has been shown. Evidence of fair market value is important to give the jury a basis upon which it can determine the fact question relative to the statutory tests above quoted. The attorneys also objected to the use of fair market value

urging that the test as to fair market value in relation to condemnation was not the same test as to fair market value in relation to the case under consideration. This Court knows of no distinction which can be drawn to the effect that there are several definitions of fair market value depending upon the nature of the case to be tried.

■ In the case now under consideration, Cashion Gin does not rely upon actual fraud but relies upon the statute and urges that the evidence discloses numerous "badges of fraud". The Arizona Supreme Court has given consideration to badges of fraud. References are found in the following cases: Ollason v. Glasscock, 26 Ariz. 193, 224 P. 284 (1924); Torosian v. Paulos, 82 Ariz. 304, 312, 313 P.2d 382 (1957); and Linder. In Torosian, the Arizona Supreme Court stated that one or a combination of two or more badges of fraud may be sufficient. This Court does not attempt to list all of the fact situations which can be classified as badges of fraud and cites only as examples of badges of fraud the following:

24 Am.Jur.—Fraudulent Conveyances Section 14, Pages 173 and 174

"C. INDICIA OR BADGES OF FRAUD

"§ 14. Generally. — Certain circumstances have come to be recognized as indicia or "badges" of fraud; and proof thereof has a more or less well defined evidentiary force or effect. The evidentiary effect of circumstances of this character depends upon the showing as to whether a satisfactory explanation thereof has been presented. The facts which are recognized indicia of fraud are numerous, the most important being the insolvency of indebtedness of the transferrer, lack of consideration for the conveyance, retention by the debtor of possession of the property, relationship between the transferrer and the transferee, the reservation of benefit to the transferrer, the pendency or threat of litigation, secrecy or concealment, and the transfer of the debtor's entire estate."

The brief of the appellant refers to additional badges of fraud:

"Conduct of transfer not in usual course of business. 37 C.J.S. Fraudulent Conveyances. Section 83, page 925. Transfers to persons having no apparent use for the property. 37 C.J.S. Fraudulent conveyances, Section 96, page 930."

These listings are intended only to be illustrative. We do not urge that they are all inclusive. The descriptive language may vary. The actual application of the badges of fraud is to be applied on the re-trial of the case. It is the opinion of this Court that the record reflects sufficient badges of fraud to present a prima facie case requiring that the motion for directed verdict be denied.

■ In equity cases as in law cases where there are fact issues, the parties are entitled to a jury consideration. Security Trust & Savings Bank v. McClure, 29 Ariz. 325, 241 P. 515 (1925); Light v. Chandler Improvement, 33 Ariz. 101, 261 P. 969, 57 A.L.R. 107 (1928); and Haynie v. Taylor, 69 Ariz. 339, 213 P.2d 684 (1950).

This is true even though thereafter in an equity case the court is not required to follow the findings or recommendations of the jury. Security Trust and Light.

■ We are of the opinion that the record discloses a prima facie case of a fraudulent conveyance under the statute being that conveyance from Mr. and Mrs. Kulikov to Roy A. Kulikov. We are of the opinion that there are at least fact issues as to the circumstances surrounding the purchase by Mr. and Mrs. Valor and that even should they be found to have paid a fair consideration without knowledge of any fraud, they should not have been granted a directed verdict, for in doing so, the plaintiff was deprived of its rights under Section 44–1009 B.

The trial court was in error in directing a verdict both as to Mr. and Mrs. Kulikov and as to Mr. and Mrs. Valor. This cause is reversed and remanded for a new trial consistent with this opinion. The matter of the assessment of jury fees in relation to

the first trial shall abide the outcome of the second trial.

CAMERON and DONOFRIO, JJ., concurring.