[Civil No. 2686.   Filed April 2, 1928.]

[266 Pac. 8.]

C. F. AINSWORTH and ELIZA AINSWORTH, Appellants, v. NATIONAL BANK OF ARIZONA AT PHOENIX, a Corporation, and W. T. SMITH, Appellees.

Mr. C. F. Ainsworth and Mr. J. Early Craig, for Appellants.

Messrs. Armstrong, Lewis & Kramer, for Appellee National Bank of Arizona at Phoenix.

Messrs. Baker & Whitney, for Appellee W. T. Smith.

LOCKWOOD, J.—On the twelfth day of December, 1924, Charles F. Ainsworth and Eliza Ainsworth, his wife, hereinafter called defendants, were indebted to the National Bank of Arizona, a corporation, hereinafter called plaintiff, in the sum of some $18,000, which debt was evidenced by a promissory note and secured by a pledge of two certificates of stock in the Gila Water Company, numbered 86 and 87, and representing one thousand shares of such stock. The indebtedness being at that time overdue, plaintiff informed defendants that, as a condition for a renewal of the loan, they would be compelled to give security in addition to the stock above referred to, and they therefore executed in favor of plaintiff a new note covering the indebtedness and secured by a realty mortgage on certain lots in the city of Phoenix, together with a pledge of the one thousand shares of stock above referred to. The note on its face set up that the stock had been pledged as collateral security, and authorized plaintiff to sell it at public or private sale without notice in case of failure of defendant to pay the note when due. The note became due one year after date, and plaintiff notified defendants shortly thereafter

that it would be compelled to collect the money. Defendants told plaintiff that they had a contract for the sale of the real estate which would produce far more than enough to pay the note, and that, as soon as the sale was consummated, it would be paid in full. They also stated that Eliza Ainsworth was expecting to leave Phoenix for an extended trip, and would not return for several months; whereupon plaintiff requested that she execute a power of attorney to someone who could accept service in case it desired to commence foreclosure proceedings on the real estate mortgaged before she returned, but said nothing whatever in regard to a sale of the stock.

Some time in the last of February or first part of March, 1926, defendant Charles F. Ainsworth was notified that plaintiff intended to sell such stock at public auction on the eighth day of March, but shortly before the sale was to be made plaintiff informed him that, owing to the fact that his wife was absent from the state, and could not be served legally with notice of the sale, the public sale would not be made, and the stock would be sold at private sale. Just prior to the giving of this notice of private sale, plaintiff had received from W. T. Smith, one of the other defendants in this case, an offer of one thousand dollars for the stock in question, and informed Smith that it would be sold on the 13th of March. No notice was ever given defendants of this private understanding with Smith. On the 13th of March plaintiff's president took the stock out of an envelope, and in a private place, in the rear of the bank, inquired of the atmosphere if there were any bids on the stock, there being no one present but himself. No answer, of course, being made to his query, he then stated that defendant Smith offered one thousand dollars, and that the stock was sold to him for that price. Some few days later defendant Charles

F. Ainsworth was informed of the alleged sale. He immediately repudiated it, and stated to plaintiff that the matter would be fought out in the courts.

A suit for the foreclosure of the realty mortgage had been filed about this time, and defendants, answering it, set up the alleged sale of the stock, claiming that it was illegal, and offering to pay the full amount of the indebtedness upon the return to them of the stock and satisfaction of the note and mortgage. The case came to trial before a jury, but, after the evidence had been presented, the court withdrew it from the jury, and excused them from the case without submitting to them either special interrogatories or a verdict, on the ground that the matter was an equity one, and should be determined by the court alone. The case was argued, and the court, after taking it under advisement, entered an order on April 18th, which reads as follows:

"It is therefore ordered that the alleged sale be set aside, and the stock returned to the pledgors upon the condition that the pledgors pay into court within fifteen days from the date hereof the sum of eighteen thousand dollars, with interest thereon at eight per cent. per annum from December 12th, 1924, together with the costs of the plaintiff and one thousand dollars attorney's fees as provided in the mortgage, said funds to be distributed as follows: one thousand dollars thereof to defendant W. T. Smith, with interest thereon at eight per cent. per annum from March 19th, 1926, and the balance to plaintiff."

Defendants not having complied with this order in the time therein set forth, the court, after the expiration of the fifteen days, entered judgment in favor of plaintiff for the full amount due on the note, less the one thousand dollars for which plaintiff sold the stock in question to Smith, ordered a foreclosure of the realty mortgage, and confirmed the sale of the stock. From this judgment defendants have appealed.

There are some sixteen assignments of error; but we think, for the purposes of determining this case, we may consider them as raising but three legal questions: First. Was the court in error in taking the matter from the jury without submitting to them any special interrogatories or a verdict? Second. Was plaintiff authorized to sell the stock in controversy? Third. If it was so authorized, was that power exercised in the manner required by law?

It is urged by appellant that this action is one at law rather than in equity. We think, however, we have disposed of this contention by several decisions of this court. *Light* v. *Chandler Imp. Co., ante,* p. 101, 261 Pac. 969; *Davis* v. *First Nat. Bank,* 26 Ariz. 621, 229 Pac. 391; *Schwertner* v. *Provident Mutual B. & L. Assn.,* 17 Ariz. 93, 148 Pac. 910; par. 4113, Rev. Stats. of Ariz. of 1913, Civil Code.

The proceeding is an equitable one. Paragraph 542, Revised Statutes of Arizona of 1913, Civil Code, as amended by chapter 125, Session Laws of 1921, reads as follows:

"542. In all actions where equitable relief is sought, if a jury be demanded by either party, and where more than one material issue of fact is joined, the court, in its discretion, may submit written interrogatories to the jury, covering all or part of the issues of fact, and such interrogatories shall be answered by the jury; provided, that such interrogatories shall be approved by the court, and each interrogatory shall be confined to a single question of fact and shall be so framed as to be answered by yes or no, and shall be so answered where yes or no is possible. In every such case the verdict of the jury shall be deemed advisory to the court in the determination of the action."

Under the provisions of this paragraph, whenever a jury is called in an equity case, we have held that all evidence submitted to the court must be also presented to the jury in order that it may answer the

interrogatories submitted to it. *Security Trust & Sav. Bank* v. *McClure,* 29 Ariz. 325, 241 Pac. 515. And it is the duty of the court to listen to the advice of the jury in equity proceedings, no matter whether it is followed or not. *Light* v. *Chandler Imp. Co., supra.* Under paragraph 542, *supra,* however, the court is given discretion, even after a jury is called in an equity case, as to whether it should submit interrogatories at all. If it is of the opinion that such action is not necessary, it may refuse to submit any interrogatories, and in such case there would be no error in discharging the jury, since, if no interrogatories are submitted, there is nothing for it to pass on.

We proceed, then, to the question of whether plaintiff was entitled to sell the stock at private sale or without notice to defendants. The note upon its face clearly authorizes such a sale, and we have held in *Atlantic Nat. Bank of Boston* v. *Korrick,* 29 Ariz. 468, 43 A. L. R. 1184, 242 Pac. 1009, that, if the agreement so provides, the sale may be made. Defendants contend they should have been allowed to show an oral agreement that the stock was not to be sold until the real estate security had first been exhausted. We think this is not permissible, as it would be a clear attempt to alter the terms of a written instrument by parol.

There remains, then, the third question, which is, Was the power to sell exercised as required by law? We have held in *Atlantic Nat. Bank, etc.,* v. *Korrick, supra:*

"That there existed between the parties a trust. relation, and that pledgee in exercising the power of sale owed a duty to the defendants to act in good faith, cannot be questioned."

In *United Bank & Trust Co.* v. *Jones,* 30 Ariz. 557, 249 Pac. 747, we discussed the duty of a pledgee as follows:

"There is no question that the pledgee, in exercising the power of sale conferred by the agreement, must do so in all good faith towards the pledgor who has intrusted him with the power. The extent of his interest is to get out of the pledge what he has put into it, or what has been agreed he shall have, and when the event has happened authorizing him to sell for that purpose he may do so, but it must be a *bona fide* sale and not a colorable one merely. The confidence imposed in the pledgee must not be abused or arbitrarily or improvidently exercised without regard to the rights of the pledgor. It is said, in *Foote* v. *Utah Commercial & Savings Bank,* 17 Utah, 283, 54 Pac. 104:

" 'The sale must be fair, and the contract must be construed benignantly for the debtor's interest as well as that of the pledgee."

"In *Montague* v. *Dawes,* 14 Allen (Mass.) 373, this very fair and reasonable rule was laid down:

" 'One who undertakes to execute a power of sale is bound to the observance of good faith and a suitable regard for the interests of his principal. He cannot shelter himself under a bare literal compliance with the conditions imposed by the terms of the power. He must use a reasonable degree of effort and diligence to secure and protect the interests of the party who intrusts him with the power. A stranger to his proceedings, finding them all correct in form, and purchasing in good faith, may not be affected by his unfaithfulness. But whenever his proceedings can be set aside without injustice to innocent third parties, it will be done upon proof that they have been conducted in disregard of the rights of the donor of the power. When a party who is intrusted with a power to sell attempts also to become the purchaser, he will be held to the strictest good faith and the utmost diligence for the protection of the rights of his principal. If he fail in either, he ought not to be permitted thereby to acquire any irrevocable rights which he can set up against the party whose interests he has sacrificed.' "

Such being the law, and the probative facts being as set forth above, we are of the opinion there remains an issue of fact as to whether or not plaintiff

had exercised the good faith required by law in the sale of the stock. The determination of this issue will also determine whether the defendants are entitled to credit on their indebtedness only of the one thousand dollars or of the actual value of the stock at the time of sale, and therefore the judgment which should be rendered. If the trial court was of the opinion that good faith in the sale of the stock had not been shown it had no right to confirm such sale, either absolutely or conditionally. If, on the other hand, good faith had been exercised, the sale should have been confirmed without condition. In this case the judgment shows that it was rendered upon the ground that defendants had failed to comply with the condition of a certain order made April 18th. Under either theory of the case, this order was erroneous, and a judgment based upon it would be equally faulty.

The judgment must be reversed, and the case remanded for a new trial, for the reasons above set forth. It is so ordered.