[Civil No. 3572. Filed December 2, 1935.]

[51 Pac. (2d) 921.]

J. H. STEPHENS and MAY STEPHENS, Appellants, v. Y. C. WHITE, as Superintendent of Banks of the State of Arizona and Ex-officio Receiver of the Prescott State Bank and Commercial Trust and Savings Bank, Appellee.

Mr. G. W. Shute, for Appellants.

Messrs. Favour & Baker, for Appellee.

McALISTER, J.—This is an appeal by J. H. Stephens and his wife, May Stephens, from a judgment decreeing an equitable lien to exist in favor of the plaintiff, Y. C. White, as Superintendent of Banks of the State of Arizona, on certain real property owned by them. Following a denial of their motion for a new trial they brought the matter here for review.

The record discloses the following facts: The Prescott State Bank and the Commercial Trust and Savings Bank, going concerns on November 25, 1925, were that day taken over by the Superintendent of Banks for liquidation, and among their assets were notes amounting to $159,449.30, made by the defendants to these banks and secured by realty and chattel mortgages. The Superintendent of Banks, *ex-officio* receiver of insolvent banking institutions in Arizona, appointed one Homer R. Wood to act as a special deputy for his department to administer the affairs of these two banks, and after looking into their condition he decided that a foreclosure of these mort-

gages should not be instituted at that time and agreed that defendant, J. H. Stephens, should remain in possession and handle the property covered by them for the purpose of keeping it in good condition in order that it might be sold at the best possible advantage. So, with the approval of the court, two renewal notes, payable to the plaintiff three years after date and bearing four per cent. interest, were executed by the defendants under date of May 1, 1926, one for $94,097.37 to A. T. Hammons, Superintendent of Banks and Receiver of the Prescott State Bank, and one for $41,392.02 to the same officer as receiver of the Commercial Trust and Savings Bank. These notes were secured by a mortgage covering the same real property as did those securing the demand note or notes of which they were renewals and a part of this was Sections 21 and 27 and the north half of Section 33, township 16 north, range 4 west, Gila and Salt River Base and Meridian. These two and a half sections lay on the west side of the large acreage held by defendants in Williamson Valley as grazing lands and were within the boundaries of the Prescott National Forest in Yavapai county.

Due, however, to certain regulations on the part of the forest service the defendant, J. H. Stephens, believed it would be beneficial to the mortgaged property to exchange these two and a half sections for lands outside the forest, and since this could be done under a recent act of Congress, 42 Statutes at Large, 465 (16 U. S. C. A. § 485) requested the United States Government on December 9, 1927, to make such an exchange and the government agreed to do so, the principal advantage of such a deal being that both the defendants and the government could block their lands. Before the agreement could be consummated, however, it was necessary that the lien of the plain-

tiff's mortgage on this land dated May 1, 1926, be removed, so the special deputy, Homer R. Wood, believing the exchange to be for the best interest of the estates of the insolvent corporations, executed on July 30, 1928, without the approval of the court, an instrument releasing it from the lien, and on January 16, 1929, after this release had been filed with the proper department and a deed of the defendants conveying the lands to the United States Government delivered, a patent conveying to J. H. Stephens in lieu thereof Sections 24 and 36 and one-half of Section 26, township 16 north, range 4 west, which lies outside the Prescott National Forest and almost within the center of the other lands of the defendants covered by the mortgage, was issued to Stephens by the government.

The defendants failed to make their payments on the renewal notes and on July 29, 1930, the plaintiff's predecessor in office filed suit in the superior court of Yavapai county, No. 11625, to collect them and to foreclose the mortgage lien on the lands embraced within the mortgage and not released therefrom by the plaintiff, or his predecessor, but did not incorporate in the complaint the lands conveyed by the government to the defendant. J. H. Stephens and his wife defaulted in that action but E. A. Marlow and Evy Marlow, his wife, who were also made defendants, answered, and Harry E. Stephens intervened. The action resulted in a judgment for plaintiff in the sum of $160,581.98 and for a foreclosure of the mortgage lien as prayed for. The property was sold thereunder on October 27, 1930, but it brought only $80,000, which was less than the amount due by $80,581.98, and a deficiency judgment for this sum was entered against J. H. Stephens and wife.

The complaint alleges that the lands conveyed to the defendant by the government in lieu of the two and a half sections deeded to it were omitted from the complaint in cause No. 11625, because the receiver did not know at that time that the patent conveying them to the defendant had then been issued, since it had not been placed of record and the latter had told his predecessor in office several times that he had never received it; that by inquiring at the United States Land Office in Phoenix later on the receiver learned that the government had issued it on January 16, 1929, and forwarded it to defendant by registered mail; that thereupon he obtained a certified copy of it and had it recorded on January 5, 1931; that the release of the receiver's mortgage lien on the two and a half sections of forest reserve land was executed by his predecessor in office upon the definite and positive agreement on the part of the defendant, J. H. Stephens, that the land the government had agreed to convey to him in lieu thereof should be substituted in the mortgage for them and be subject to all the terms and conditions thereof, but that, instead of permitting the mortgage lien to attach to the lieu lands as he had agreed, or deeding them to the receiver, the defendant sought on April 17, 1931, to subject one section of them to a homestead superior in right to the receiver's by causing to be filed thereon a declaration of homestead and on July 6, 1933, according to the evidence, to dispose of the other section and a half by conveying it to H. E. Stephens; that by reason of the foregoing facts the defendant, J. H. Stephens, obtained from the government the lieu lands charged with a trust for the use and benefit of the plaintiff and subject to the terms and conditions of the mortgage dated May 1, 1926; that plaintiff is entitled to have this mortgage reformed so as to

include these lands and as reformed foreclosed; that on the 29th day of March, 1933, the plaintiff, in the Matter of the Estate of the Prescott State Bank and the Commercial Trust and Savings Bank, Insolvents, No. 10128 and No. 10129, applied to the court for an order approving *nunc pro tunc* the release of the mortgage lien which his predecessor had made July 30, 1928, on condition that he would receive the lieu lands in place of those released; that such order was made on April 17, 1933, and that without it any transfer or release of the said lands by the plaintiff was null and void and unenforceable. The prayer was that the court decree that J. H. Stephens held the two and a half sections of lieu land in trust for the use and benefit of the plaintiff, that the plaintiff had an equitable mortgage thereon to the extent of $80,581.98 and that it be foreclosed.

The defendants demurred generally to the complaint and answered further setting up, among other things, the Marlow note and mortgage transaction, which was substantially this: Several years prior to the insolvency of the Prescott State Bank J. H. Stephens had borrowed from one Everett Marlow $15,000 for the purpose of purchasing sheep to be placed and fed upon his lands but, due to the fact that he was then indebted to the bank on unsecured obligations, he preferred not to sign a note and mortgage, so he requested his son, H. E. Stephens, to execute a note for that sum to Marlow and to secure its payment by giving a mortgage on 520 acres of land owned by him. The son complied with this request by executing both under date of October 27, 1919, whereupon the $15,000 was loaned by Marlow to J. H. Stephens, who regularly and promptly satisfied the interest of $1200 a year thereon up to, and including, 1927, the note, though payable one year after date, having been

extended from time to time until October 27, 1928. About two years after the execution of the note and mortgage by Harry E. Stephens, that is, on September 21, 1921, he conveyed to J. H. Stephens the 520 acres of land described in the mortgage and as a part of the consideration therefor the latter assumed and agreed to pay the mortgage thereon. Some time the following year J. H. Stephens gave the Prescott State Bank a mortgage on these same 520 acres of land, it being junior to that held by Marlow.

After the insolvency of the bank it became necessary to liquidate J. H. Stephens' indebtedness to it and in an effort to accomplish this the answer alleges that the plaintiff's predecessor and J. H. Stephens agreed that the indebtedness to Marlow was in reality the obligation of the defendant, J. H. Stephens, and that Harry E. Stephens was merely an accommodation maker of the note and mortgage for his benefit; that, due to the fact that the lands covered by the mortgage of Marlow were a part of those mortgaged to the bank and if freed from the lien thereof would be valuable in liquidating the amount due the bank because a purchaser at the foreclosure sale could then obtain title to the lands in a solid block, and to the further fact that Marlow was threatening to foreclose his mortgage, they agreed that J. H. Stephens would endeavor to induce Harry E. Stephens to discharge the Marlow mortgage, amounting then to $16,200, and carry the same until the property covered by the mortgage of J. H. Stephens to the bank could be sold at which time the $16,200 would be returned to him out of the moneys realized from the sale of this property and the remainder thereof paid the bank; that J. H. Stephens, pursuant to the agreement between him and plaintiff's predecessor, suc-

ceeded in persuading Harry E. Stephens to advance the money under these terms.

The answer avers also that plaintiff's predecessor and defendant, J. H. Stephens, decided further that it would make the property covered by the bank's mortgage more attractive to prospective purchasers and, hence, more salable to exchange the two and a half sections of land lying within the Prescott National Forest with the United States Government for two and a half sections outside the forest but within the same township, and that pursuant to this understanding, J. H. Stephens, with the consent of the Superintendent of Banks, took the necessary steps to, and did, secure the exchange but at no time was there any agreement whatever that the lieu lands should be included in the mortgage held by the Prescott State Bank, the whole proceeding having been instituted with the view of selling the property at the best advantage and dividing the money between H. E. Stephens and the bank in the proportion set forth above.

The answer alleges further that on July 29, 1930, the plaintiff's predecessor, in violation of his agreement with the defendant, J. H. Stephens, began an action to foreclose the bank's mortgage and, notwithstanding the sale of the property for $80,000, following a decree foreclosing his lien the plaintiff has failed and refused to repay Harry E. Stephens the $16,200; that in that proceeding, No. 11625, the plaintiff herein did not claim a mortgage or any title whatever to the lieu lands deeded to J. H. Stephens by the United States Government; that by the terms of the agreement between J. H. Stephens and Harry E. Stephens, the former obligated himself to pay the latter $16,200, which, pursuant to the understanding had between him and the plaintiff's predecessor,

should in equity have been paid by the Prescott State Bank.

The plaintiff moved for judgment on the pleadings and by way of reply made these denials: that H. E. Stephens signed a note and mortgage on his lands as security for $15,000 borrowed by J. H. Stephens from Everett Marlow; second, that there was an agreement between plaintiff's predecessor and J. H. Stephens that the $15,000 was the debt of J. H. Stephens; third, that the latter should, or did, induce H. E. Stephens to discharge the note and mortgage on condition that he should carry the indebtedness until the property covered by the bank's mortgage could be liquidated; fourth, that plaintiff's predecessor ever agreed that H. E. Stephens should be paid any sum whatever out of the proceeds of the sale of the property, or that he was obligated in law or equity to make such payment, and alleged affirmatively that the question of an agreement to repay H. E. Stephens the $16,200 out of such proceeds was adjudicated in the foreclosure suit No. 11625, and to question it in this action would constitute a collateral attack on the judgment in that case.

At the close of the evidence the plaintiff moved for judgment, not an instructed verdict, and the court, acting upon the theory that since the case was one of equitable cognizance the verdict was merely advisory, excused the jury and granted the motion. Following the denial of a new trial the defendants appealed.

 The first error complained of is the overruling of the demurrer to the second amended complaint upon which the case was tried. It is contended that it does not state a cause of action and they assign two reasons why this is true. The first is that its allegations disclose that appellee's predecessor in

office released the bank's mortgage lien on the two and a half sections of land on July 30, 1928, without an order of court approving such action and, this being the case, his act was a nullity. It is true that acts of the Superintendent of Banks affecting the property of insolvent banks must receive the approval of the court to be valid, because, as the liquidating agent of such institutions, he sustains the same relation to the court that exists between a receiver and the court appointing him, and a receiver can neither sell, lease or encumber property committed to his care by the court, nor in fact take any action materially affecting it, except by approval of the court. *Hammons* v. *Waite,* 30 Ariz. 392, 247 Pac. 799. Realizing that this was true and, consequently, that the release of July 30, 1928, was without effect, appellee's predecessor applied on March 29, 1933, more than four years and eight months after its execution, for an order approving it *nunc pro tunc,* and his application was granted on April 17, 1933, but, inasmuch as the court had never made an order of any character pertaining to the release prior to that time, there was nothing upon which a *nunc pro tunc* order could rest. It is only where an order is actually made at the time but for some reason does not become a matter of record that an entry of it may be later supplied. If one was not actually made then, there is nothing to be entered now. That it should have been made then, or that it was the intention of the court to make it, is wholly immaterial. The oversight cannot be supplied through the instrumentality of a *nunc pro tunc* order. *Perkins* v. *Hayward,* 132 Ind. 95, 31 N. E. 670; *Hofacre* v. *City of Monticello,* 128 Iowa 239, 103 N. W. 488; *Burnside* v. *Wand,* 170 Mo. 531, 71 S. W. 337, 62 L. R. A. 427; 46 C. J. 835; 34 C. J., § 221, p. 79.

However, the fact that the term, *nunc pro tunc*, was used both in the application and the order does not mean necessarily that such was in fact what appellee sought and obtained. The order of the court as entered did, it is true, authorize the execution of a release of the mortgage lien upon the lands in question as of July 30, 1928, yet it also specifically approved and ratified the one made on that date, and the effect of this was to render the action of the Deputy Superintendent of Banks in making the release valid, the fact that ratification had taken place more than four years subsequent to the giving of the release being wholly immaterial, except in so far as the rights of a third party in the subject matter may in the meantime have intervened and been affected by it. Treating the order of April 17, 1933, therefore, merely as a ratification of the release, as it should be regarded, and not as an approval *nunc pro tunc,* one encounters the other reason urged by appellants why the second amended complaint does not state a cause of action, and that is that it nowhere affirmatively appears therefrom that appellants had notice of the application or of the hearing thereon, or that they even knew of the order for a long time after it had been made. The contention is that, since the release affected the substantial rights of J. H. Stephens and wife, notice of the hearing seeking its approval was jurisdictional and any consideration of the application or any order entered thereon in the absence of such notice was void.

While this may be true as a general proposition of law, we are of the opinion that under the allegations of the complaint the court did have jurisdiction to hear the application and dispose of it, even though appellants were not advised of the hearing. The application was made and the approval had in

causes No. 10128 and 10129 of the superior court of Yavapai county, which were matters dealing with the Estates of the Insolvent Banks, proceedings to which appellants were not parties, and the terms and conditions upon which the release should be approved were wholly for the judge of that court to decide. And while it is true that in order to dispose of the application properly the court should have had all the facts before it, those urged by the appellants as well as those advanced by appellee, yet the allegations of the second amended complaint disclose those upon which the court acted in approving the release and they are such that refusal by the court to approve the release in substantially the form in which it was granted would have been arbitrary. The averments show that J. H. Stephens, because of certain forest regulations and the fact that it would enable him to block his lands, believed it would be beneficial to the mortgaged lands to exchange the two and a half sections of it within the Prescott National Forest for a similar acreage lying outside of the reserve and almost within the center of his other mortgaged lands, and that, believing this, he initiated and carried to completion the negotiations with the government which culminated in the exchange. It appears further that before the exchange could be consummated it was necessary that the bank's lien be removed from these two and a half sections and, in order to bring this about, appellant, J. H. Stephens, requested the Deputy Superintendent of Banks to release it and he, feeling also that it would be beneficial to the other lands upon which the bank's mortgage lien existed, did so. It is plain from this that it was not only an exchange of lands between appellants and the government but as well an exchange of securities between appellants and the then Superintendent of Banks.

Clearly, the court had no authority to and would not have approved a release of the bank's security without any consideration whatever, yet such is the effect of appellant's contention. One of the chief purposes of the exchange, at least so far as appellants were concerned and the Superintendent of Banks agreed to it for the same reason, was that it would enable the former to block their lands and render them more attractive as an investment, yet to have allowed them to acquire title to the sixteen hundred acres lying practically within the center of the other lands covered by the mortgage without at the same time requiring them, after receiving title to them, to subject them also to the lien of the mortgage would have meant defeat of the very end sought to be accomplished. The fact, therefore, that appellants had no opportunity to offer evidence denying that they agreed to subject the lieu lands to the mortgage could have resulted in no injury to them, even though such testimony had been introduced. With this before it, the duty of the court would still have been to do what it did do, ratify and approve the release only upon condition that the lieu lands should become subject to the mortgage, that is, that they should be substituted in that instrument for those that had been released from it and conveyed to the government. If there was no specific agreement to this effect the facts would clearly imply one, for the only inference to be drawn from them is that appellant, upon receipt of the patent, would hold the lands in trust for the bank to the extent of its interest. There was no error in overruling the demurrer.

At the close of the evidence appellee moved for judgment and the court, after excusing the jury, granted the motion. The court's view was that since the case was one of equitable cognizance, the burden was, as

he expressed it, "cast on the court to rule and the jury hasn't anything to do with it except to advise." Appellants assign this ruling as error, their contention being that even though the case is one in equity and the verdict only advisory, yet it was still the duty of the court, since there were disputed questions of fact, to submit the matter to the jury through interrogatories, whether he followed the verdict or not. Notwithstanding section 3829, Revised Code of 1928, provides that "In actions where equitable relief is sought, if a jury be demanded, . . . the court *may* submit written interrogatories to the jury," and that "the verdict shall be only advisory to the court," appellants urge that the court should have permitted the jury to pass on the case whether he accepted its advice or not, and as authority for this proposition cite the following decisions of this court: *Rundle* v. *Winters,* 38 Ariz. 239, 298 Pac. 929; *Light* v. *Chandler Imp. Co.,* 33 Ariz. 101, 261 Pac. 969, 57 A. L. R. 107; *Ainsworth* v. *National Bank,* 33 Ariz. 466, 266 Pac. 8; *Security Trust & Savings Bank* v. *McClure,* 29 Ariz. 325, 241 Pac. 515. These cases do not go to the extent claimed for them by appellants. They merely hold that it is optional with the court whether he submit the issues to a jury in an equity case and that, if he does submit them, it is still optional with him whether or not he follows the verdict, but they do say that it is the duty of the court, when a case has been submitted to a jury, to listen to and consider carefully its verdict, and that he may not reverse his ruling and admit for his own consideration evidence which the jury did not have. These decisions go no further than this.

██ Whether, in excusing the jury and deciding the matter himself, the court felt that there were no disputed questions of fact, or if there were, that they

were of such a nature that he did not need the jury's advice to decide them, does not appear and is wholly immaterial. If there were no disputed facts his duty was the same as it would have been had the action been one in law, for "when the evidence is of such a nature," to use the language of *Rundle* v. *Winters, supra,* "that, were it an action at law, it would be the duty of the court to instruct a verdict, it is obvious that no question of fact remains for the consideration of the jury, and it is proper practice that the court under such circumstances discharge the jury from further consideration of the case." And if the evidence were in dispute but such that the court felt it did not need the jury's aid in determining the issues, he was not required either to submit the case or follow the jury's verdict in case he did. It is clear, therefore, that the court did not commit error in granting the motion for judgment.

In fact, this would be true under the evidence introduced even though the law made it mandatory upon the court to submit the issues in an equity case, because the real question presented by the record is whether the release was executed upon an understanding or agreement between J. H. Stephens and Homer Wood, Deputy Superintendent of Banks, that the lieu lands, when patent to them should be received, would be substituted in the bank's mortgage for the two and a half sections released, and it has been pointed out that under the undisputed evidence there was an implied, if not a specific, agreement that this would be done and such being the case, there would have been nothing relating to that agreement to submit to the jury. The other matter concerning which appellants insist interrogatories should have been submitted is whether the Deputy Superintendent of Banks promised or agreed to repay H. E. Stephens out of the

money to be received from the J. H. Stephens lands when sold, if he would discharge the first mortgage of $15,000 held by Everett Marlow on 520 acres of that land. Appellants' position seemingly is ·that since there was only a moral obligation resting on them to turn the lieu lands over to the banking department they should not be required to do so, unless and until that department also does equity by fulfilling its agreement to repay the $15,000. In other words, they declined to do equity in one matter because the other party to the agreement refused to live up to his promise in another. Unfortunately for this contention, there was no connection between them, the two matters being separate and distinct and in no way dependent upon each other. It is apparent that testimony relative to the payment of the Marlow mortgage on October 18, 1928, by H. E. Stephens, even though it was the obligation of J. H. Stephens, could have had no bearing whatever on the agreement which had culminated ·in the release of the mortgage lien nearly three months before that. Notwithstanding this, however, the position of appellants is human and natural if there was in fact a promise of repayment of the $16,200 in the way claimed by them, but for some reason the court must have felt either that there was no such promise, that it was not made in a legal or enforceable manner if there was, that it had no connection with the agreement to substitute the lieu lands in the bank's mortgage, or possibly that it had been determined in the foreclosure proceeding, No. 11625, in which H. E. Stephens intervened and sought to foreclose the Marlow mortgage and failed, the judgment therein being immune to collateral attack.

There are two other assignments, but in view of what is said in the foregoing it is unnecessary to 'discuss them.

The judgment that appellee now has and since the issuance of the patent on January 16, 1929, has had an equitable mortgage on the lieu lands to the extent of $80,581.98; that such mortgage is foreclosed, and the property sold and the proceeds applied on the payment of this sum; and that any title or interest in or to said lands acquired by anyone since the date of the filing of notice of *lis pendens* on May 11, 1933, is null and void as against appellee's equitable mortgage, is affirmed.

LOCKWOOD, C. J., and ROSS, J., concur.