387 P.2d 1019

**E. A. VAUGHEY, W. M. Vaughey and W. T. Blackburn, co-partners, trading in the name of Vaughey and Vaughey, and as White Mesa Copper Mine, Appellants,**

v.

**Claude F. THOMPSON and Gladys M. Thompson, husband and wife, Appellees.**

No. 7103.

Supreme Court of Arizona.

In Division.

Dec. 24, 1963.

**140**

Stevenson & Babbitt, Flagstaff, for appellants.

Wilson, Compton & Wilson, Flagstaff, for appellees.

LOCKWOOD, Justice.

Claude F. Thompson and his wife, hereafter referred to as appellees, sued E. A. Vaughey, W. M. Vaughey, and W. T. Blackburn, hereafter referred to as appellants, and the West Coast Minerals Company, to compel payment of $18,750, allegedly due as liquidated damage under a sales contract. When the West Coast Minerals Company failed to appear the lower court entered a default judgment against that defendant. Then the lower court, sitting without a jury, proceeded with the trial.

During the trial, appellants attempted to introduce evidence of incurable defects in the title to the mining claims, but the trial judge sustained appellees' objection to this evidence on the grounds of merger, i. e., that the terms of the agreement were

merged in the quitclaim deeds. The trial court entered judgment for appellees.

On March 9, 1955, appellees agreed to sell the West Coast Minerals Company, a Nevada Corporation, twenty-eight unpatented mining claims in Coconino County, Arizona. On August 25, 1955, the West Coast Minerals Company assigned an undivided one-half interest to the appellants. The sales contract, as amended in September and October, had several provisions pertinent to this appeal. Appellees agreed to "warrant their title to such claims" and to "transfer * * * good, clear and equitable title." In return, the purchasers promised to pay $250,000 according to a fixed schedule. Appellees agreed to place in escrow "quitclaim deeds to said claims." Upon full payment of the purchase price, these quitclaim deeds were to be delivered to the purchasers. At any time after March 9, 1956, the purchasers had the right to terminate upon payment of the minimum annual payment of $15,000, plus a proportionate amount to cover the holdover period—in this case amounting to $3,750.

The appellees, as agreed, deposited the quitclaim deeds in escrow and the purchasers went into possession and began mining operations. A conflict exists in the evidence as to what took place during February, 1957. Claude Thompson, one of the appellees, testified that one of the appellants, W. T. Blackburn, gave oral notice that the mining operations would be discontinued, but testified that Blackburn said "not a word" about any title defects. Blackburn, on the other hand, testified he told Thompson that a title examination of the mining claims had revealed incurable defects and that, consequently, appellants "were rescinding the contract." In a letter dated April 27, 1957, the appellants gave the appellees written notice of the title defects and of their intent to discontinue mining operations. This letter read in part as follows:

"The undersigned, Vaughey and Vaughey, have conducted a title examination covering the claims described in said Agreement, which includes an examination of Abstracts, the County Records and the Records of the Land Office of the Bureau of Land Management, Washington, D. C., and have reached the conclusion that the title to the Mining Claims described in said Agreement, if any title exists, is of such a nature that you cannot perform the terms and provisions of the aforementioned Agreement and that there is no possibility that you can make *a merchantable title to the undersigned pursuant to the terms and provisions of the aforementioned Agreement as amended.*

"For the reasons stated, you are hereby notified that the undersigned,

Vaughey and Vaughey, hereby elect to terminate said Agreement as amended and hereby make demand upon you for a refund of the sum of Fifteen Thousand Dollars ($15,000.00) heretofore paid to you pursuant to the provisions of said Agreement."[1] (Emphasis added.)

This suit followed. Appellees claimed appellants had "terminated" the agreement pursuant to its terms and, therefore, appellants must pay liquidated damages. Appellants insisted they had "rescinded", because of appellees' inability to warrant title to the claims as agreed.

■  Appellants contend that the lower court erred in rejecting evidence that appellees "neither had title nor any reasonable prospect of ever acquiring title to the twenty-eight unpatented mining claims." We agree with this contention. The exclusion of this material evidence constitutes reversible error.

■  Acceptance of a deed tendered in the performance of a contract sometimes merges or extinguishes the covenants and stipulations contained in the contract. Duncan v. McAdams, 222 Ark. 143, 257 S.W.2d 568, 38 A.L.R.2d 1307 (1953); 55 Am.Jur. 756, Vendor and Purchaser § 327. But this rule of merger has several important exceptions. In addition to fraud

and mistake, a well recognized qualification to merger is that the intent of the parties controls. The rule of merger does not apply to those provisions of the antecedent contract which the parties do not intend to be incorporated in the deed, or which are not necessarily performed by the delivery of the executed conveyance. Blake-McFall Co. v. Wilson, 98 Or. 626, 193 P. 902, 14 A.L.R. 1275 (1920); 55 Am.Jur. 757, Vendor and Purchaser § 328. The question whether such stipulations are merged in the deed depends upon whether the parties intended a waiver, surrender or other discharge—whether the parties intended the acceptance of the deed as full performance of the entire preliminary contract. Linbrook Realty Corp. v. Rogers, 158 Va. 181, 163 S.E. 346, 84 A.L.R. 1035 (1932); Duncan v. McAdams, 222 Ark. 143, 257 S.W.2d 568, 38 A.L.R. 2d 1307 (1953).

■  The sales contract in the instant case contains apparently conflicting clauses. The appellee-sellers agreed to "warrant their title to such claims" and to "transfer * * * good, clear and equitable title." But the contract also provides for the deposit in escrow of "quitclaim deeds to said claims"—conveyances which do not warrant title. Thus the sales contract is ambiguous on its face. The question in this case, therefore, is whether the de—

1.  The use of "terminate" in the context of the letter is ambiguous.

posit of quitclaim deeds in escrow fulfilled appellees' duties under the contract. To say that the quitclaim deeds under such circumstances constituted a merger of the terms of the agreement in the provisions of the deed begs the question.

The intention of the parties was a fact question, Temp-Rite Engineering Co. v. Chesin Construction Co., 91 Ariz. 360, 372 P.2d 701 (1962), and evidence of such intention should have been admitted. In view of our holding in this case, it is unnecessary to examine appellants' other assignments of error.

Reversed and remanded for new trial.

BERNSTEIN, C. J., and JENNINGS, J., concur.