404 P.2d 816

**George HAMMONTREE, Administrator With the Will Annexed of Nola Kenworthy, deceased, Appellant,**

v.

**Chester Leroy KENWORTHY and Olive E. Kenworthy, husband and wife, Appellees.***

No. 2 CA–CIV 62.

Court of Appeals of Arizona.

Aug. 6, 1965.

Rehearing Denied Sept. 2, 1965.

Review Denied Oct. 5, 1965.

---

\* This appeal was filed with the Arizona Supreme Court and assigned that court's No. 7958. The matter was referred to this court pursuant to Section 12–120.23 A.R.S.

MOLLOY, Judge.

This is an appeal from an order granting a new trial. The litigation arises out of the transactions between two brothers, and their wives, occurring over a period of many years.

The two brothers concerned are Ray W. Kenworthy and Chester L. Kenworthy. The facts as herein stated are almost entirely as testified to by Chester and wife, Olive, because both Ray and his wife, Nola, died before the trial of this action.

The transactions go back to the year 1928. About this time, Albert Kenworthy, the father, and Ray, the older brother, had acquired certain lands in Pinal County. In this litigation, these lands have been referred to as parcels A, B, C and D. Parcels A and D consist of 480 acres and 320 acres respectively and were acquired by the father; parcels B and C consist of 270 acres and 320 acres, respectively, and were acquired by Ray.

In 1928, Chester came to Arizona from Oklahoma and began farming parcel C under an "arrangement" with Ray. In 1930, the father died, and Ray was appointed the executor of his estate. The father's property was left in his will to his widow. In 1932, parcel D was turned over by Ray, the executor, to Chester for farm-

ing. In addition to farming these two parcels of land (C and D), Chester had an 80 acre parcel of land in his name near Coolidge, which he had purchased in 1926 before he came to Arizona. To make this purchase he had borrowed $4,000.00 from Ray, this being one-half of the purchase price. The proceeds from all of Chester's farming operations were placed in a joint bank account between Ray and Chester and the monies divided to the satisfaction of the family annually. In 1937, Chester commenced farming Ray's parcel B under the same loose arrangement.

In 1937, Chester purchased 4,865 acres of land near Blythe, California for $10.00 per acre, $1.00 per acre down and the balance at $1.00 per acre per year. In the fall of that year, Chester cleared 200 acres of this land and in the spring of 1938, he planted it to cotton. The crop grew well, but was devastated by insects at maturity, and Chester was in financial trouble.

In 1938, as the result of another oral understanding between Ray and Chester, Ray took over the Blythe, California land and Chester commenced farming, in addition to parcels B, C and D, which he was already operating, parcel A, which was still in probate in the father's estate, with Ray as executor. The joint bank account was closed and thenceforth Ray operated the Blythe property and received all of the income from it and Chester did the same for the Pinal County property. At this same time, Ray told Chester he need never repay the $4,000.00 loaned to purchase the 80 acres near Coolidge. At this time (1938), there would have been no great disparity between the value of the Blythe property and parcel C, which was later deeded to Chester by Ray. From then until 1950, Chester made substantial investments in parcel C. He substantially improved the house on the property, including air conditioning same, and the adding of four rooms thereto. During this same time, there were expended considerable amounts upon all four parcels in installing wells, pumps, barns, ditches and fences and in the leveling of the land. The amounts so expended were always less than the income from the farming and cattle raising operations conducted by Chester on these properties.

At Blythe, Ray cleared various portions of the land, from time to time, and arranged for the sale of various portions of the un-. improved land. The amounts so received were alway applied to the balance of the purchase price of the total acreage. The legal documents signed in connection with the sales of these various portions of the Blythe property were signed only by Chester and his wife, in whom record title lay, with the exception of the first such sale which occurred in the fall of 1938, which instruments were signed by both Chester and wife and Ray and wife.

In the summer of 1950, Ray informed Chester that he wanted the title to the Blythe property in his name, so that he could complete a sale that he had negotiated for a portion of the property at $150.00 per acre. Thereupon, Chester and Olive executed and delivered to Ray and Nola a deed to the Blythe property, the date of the deed being July 20, 1950. There were $44.00 in revenue stamps affixed to the instrument and it was recorded. On August 12, 1950, there was executed a deed from Ray and wife to Chester and wife of parcel C. This instrument was not recorded until 1954, at which time it was necessary to record same for the reason that Chester had negotiated the sale of parcels C and D for $115,000.00. The conveyance from Ray and wife to Chester and wife of parcel C, when recorded, had $44.00 in revenue stamps affixed to it, placed there and canceled by the escrow agent handling the 1954 sale. The ownership of parcel D had meanwhile passed to Chester through the estate of his mother who had died circa 1951 (the date is not established by the evidence), and the title to parcel A had meanwhile vested in Ray in the same manner.

In December of 1957, Ray died. His estate was probated and Chester acted as one of the appraisers. Included in this

estate and amongst the property appraised by Chester were parcels A and B. In November of 1958, Chester wrote a letter to an accountant in Phoenix, who was working on estate taxes in connection with the Kenworthy properties, in which letter there was reference to "R. W. K.'s farms here," which reference could have only been to parcels A and B.

After Ray's death, Chester attended a meeting between Nola, Ray's widow and their two children, in which it was agreed that in her will she should leave parcels A and B to the daughter and the Blythe property to the son.

At this meeting, despite admitting that the foregoing was part of what was said, Chester contended in this action that he had informed the widow that Ray had agreed many years previously to deed to him parcels A and B and that this was part of the consideration for conveying the Blythe property to Ray in 1950.

In February of 1959, Chester placed of record a "declaration of interest in lands" in which he contended that he and his wife were the owners of parcels A and B. This was served upon Ray's widow shortly thereafter. In July of 1959, Nola served a demand upon Chester and wife that they quitclaim parcels A and B to her, tendering a quitclaim deed and $5.00 as contemplated by A.R.S. § 12–1103, subsec. B. This demand was refused by Chester and wife. Subsequently this action was filed, with Chester and wife as plaintiffs and with Nola as the defendant. The complaint asks that a constructive trust be imposed upon parcels A and B, because of an oral agreement by Ray to convey these properties entered into in the year 1954, in exchange for the conveyance of the Blythe property to Ray and Nola. Prior to filing an answer, Nola died, and her administrator was substituted as the party defendant. The answer filed contained a counterclaim asking that the title of the defendant to parcels A and B be quieted, that there be recovery for taxes paid by Nola on parcels A and B for the years 1955–1959, inclusive, for rent

upon the said properties from the time of the filing of the counterclaim, for reasonable attorney's fees and for a writ of assistance to place the defendant in possession of said parcels A and B.

An amended complaint was subsequently filed, which alleged that the oral agreement occurred in the year 1952.

At the time of trial, Chester testified that the oral agreement upon which the complaint was based was made in the winter of 1951–1952. On direct examination he testified that this oral agreement took place in a tavern in Phoenix. On cross-examination he stated: "It would have had to be Blythe in '51 or possibly in '52." As corroboration for the oral agreement, plaintiffs produced a creditor of Ray who testified that sometime in 1952 he talked with Ray in Blythe, that there was an argument about monies owing from Ray to the witness, and that at this time Ray told this creditor there was no use asking Chester for the monies owed, for the reason that Ray had traded "all of my Coolidge property for all of the Blythe property." In addition, there was testimony that in 1952, the Blythe property was worth considerably more than parcel C alone, having a value at that time considerably in excess of parcels A, B and C. By 1952, Ray had cleared an additional 500 acres of the Blythe property, so that there was a total of 700 acres in cultivation, and a land boom had developed in the Blythe area.

The case was tried to a jury. On appeal, both parties accept the principle that the verdict of the jury was advisory only. At the conclusion of the trial, only two interrogatories were requested by the plaintiff, and none by the defendant. Both interrogatories requested were submitted to the jury and these, together with the answers rendered by the jury, read as follows:

"Interrogatory No. 1

"Did a relationship of trust and confidence exist between Ray and Chester at the time of the transactions in issue in this case? Answer yes or no.

"We the jury, answer Yes.

"Interrogatory No. 2

"Did Ray and Chester, on or about 1952, agree to a trade or exchange of the California property for parcels A, B and C. Answer yes or no.

"We the jury, answer Yes."

Thereafter, the court entered a judgment in favor of the defendant, in which the court found that "* * * plaintiffs had failed to prove the material allegations of their Complaint and that the evidence supports the allegations of defendant's affirmative defenses and counterclaim, * * *" Judgment was entered quieting the defendant's title to parcels A and B, rendering judgment in the sum of $5,667.37 for taxes paid by Nola on the subject land for the years 1955–1959 inclusive, for the sum of $400.00 per month as rental for the subject property from the date of the filing of the counterclaim until the date of delivery of possession, and for the sum of $10,000.00 as and for attorney's fees incurred by the defendant in the prosecution of the action.

Among the defenses set up by the defendant was that the conveyance of parcel C to Chester and wife, when accepted, merged all prior oral understandings between the parties. Plaintiffs filed a motion for new trial in which they contended that it was error not to submit this defense of merger to the jury, that there was no evidence of any oral lease between Ray and Chester under which Chester was obligated to pay the taxes during the years 1955–1959 on the subject property, that there was no evidence to support a rental value of $400.00 per month on the subject land, and that there was no evidence to support the award of attorney's fees in the amount of $10,-000.00.

Thereafter, the court entered the following order:

"ORDER granting plaintiffs motion for new trial for the reason that the awards to the defendant herein are not supported by the evidence and for the

additional reason that all issues were not submitted to the jury."

It is from this order that an appeal is taken. The defendant contends, and the plaintiffs do not contest, that the word "awards" in the above order refers to the judgments for taxes, rent and attorney's fees, and does not refer to the disposal of the issues pertaining to the ownership of parcels A and B.

■ The trial court having specified its reason for granting a new trial, this court is limited to that ground in reviewing the discretion exercised by the trial court in granting the motion. State v. McMinn (1960), 88 Ariz. 261, 355 P.2d 900.

The defendant contends on appeal that the trial court erred in the granting of the motion for new trial for the reasons that (1) the plaintiffs did not include in their motion for new trial the failure to submit issues to the jury, (2) the doctrine of meger conclusively pertains to the facts of this case and there was no issue in this regard to submit to the jury, (3) the plaintiffs waived the submission of any issues to the jury as to which interrogatories were not requested, and (4) there was sufficient evidence to support the dollar awards to the defendant.

■ These contentions will be discussed in the above order. As to the contention that the court was limited in granting a new trial for the reasons presented by the moving party, this court holds that the reasons stated:

"Error in the charge to the jury.

"Errors of law occurring at the trial and during the progress of the action."

* * *

are sufficiently broad, particularly when considered in the light of the arguments presented in support of the motion, to include the question of whether issues were erroneously not submitted to the jury. Moreover, this court rejects the contention of the defendant that the trial court is limited to the reasons stated in the motion in granting a new trial. In this jurisdiction,

the court may on its own motion grant a new trial "* * * for any reason for which it might have granted a new trial on motion of a party, * * *" Rule 59(g) Rules of Civil Procedure, 16 A.R. S.

As to the contention that the doctrine of merger conclusively pertains to the facts of this case, this court holds that this contention also is without merit. Granted there be cases which hold that when a deed is received after an agreement it is conclusively presumed to have superseded the previous agreement, this view has been rejected in this state. Vaughey and Vaughey v. Thompson (1963) 95 Ariz. 139, 387 P.2d 1019. This case holds:

"* * * The rule of merger does not apply to those provisions of the antecedent contract which the parties do not intend to be incorporated in the deed, or which are not necessarily performed by the delivery of the executed conveyance. (citations omitted) The question whether such stipulations are merged in the deed depends upon whether the parties intended a waiver, surrender or other discharge—whether the parties intended the acceptance of the deed as full performance of the entire preliminary contract. * * *"

In accordance with this authority, this court holds that it was a question of fact as to whether or not the deed to parcel C which was accepted by the plaintiffs was a merger of any prior oral understanding between them and Ray Kenworthy.

As to the failure to submit the issue of merger to the jury, this court holds there was no error in failing to submit same to the jury and therefore there is no valid reason for a new trial on this ground.

The plaintiffs have contended that Rule 49(g) of Rules of Civil Procedure is not applicable to a case in equity. Pertinent language in Rule 49(g) is as follows:

"The court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact. * * * If in so doing the court omits any issue of fact raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issue so omitted unless before the jury retires he demands its submission to the jury. As to an issue omitted without such demand the court may make a finding, or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict."

The above rule is taken from the Fed. Rules Civ.Proc., Rule 49(a). In the Federal Court, there is no right to a jury trial in an equity case. Rule 39(c) Fed.Rules Civ.Proc.; Humble Oil & Refining Co. v. Sun Oil Co. (5th C.A.Tex.1951), 191 F.2d 705.

The situation in Arizona pertaining to the right of a jury trial in an equity case is a curious one and included in our Rules of Civil Procedure is a special rule on the subject, Rule 39(*l*), which has a statutory origin in Ch. 125 of the Laws of 1921. The rule reads as follows:

"In actions where equitable relief is sought, if a jury is demanded, and more than one material issue of fact is joined, the court *may* submit written interrogatories to the jury covering *all or part* of the issues of fact, and such interrogatories shall be answered by the jury. The interrogatories shall be approved by the court, and each interrogatory shall be confined to a single question of fact and shall be so framed that it can be answered yes or no, and shall be so answered. The answers shall be only advisory to the court." (Emphasis added)

The plaintiffs argue that, inasmuch as this rule does not provide for a waiver, there is no waiver of a jury trial as to issues as to which no interrogatory was requested, and, a trial by jury having been demanded, the trial court was bound to submit all factual issues to the jury. This not having

been done, they contend that the trial court was bound to grant a new trial.

The plaintiffs rely upon a series of Arizona Supreme Court cases upon the right of trial by jury in equity cases. None of the cases, however, supports the particular contention made by the plaintiffs.

In Brown v. Greer (1914), 16 Ariz. 215, 141 P. 841, it was stated that a statutory provision granting a jury trial as a matter of right in both law and equity cases, in existence at the time of the adoption of our state constitution, was perpetuated by the clause in the Constitution (Art. 2 § 23, A.R.S.) providing that the right of trial by jury should remain "inviolate." In Donahue v. Babbitt (1924), 26 Ariz. 542, 227 P. 995, it was held that the statement of Brown v. Greer was dicta and was in error; that the right of trial by jury as guaranteed by the Constitution was " * * * a guaranty of trial by jury as it was known at common law * * *" (26 Ariz. 550.) In Donahue, Ch. 125 of the Session Laws of 1921 (the predecessor of our Rule 39(*l*) quoted above) was held to be constitutional. Inasmuch as this statutory provision provided that the court " * * * *may* submit written interrogatories to the jury * * *" (emphasis added) in an equity case, and in view of the fact that Donahue quotes with approval from the case of Dooley v. Burlington Gold Mining Co. (1909), 12 Ariz. 332, 100 P. 797, as follows:

" * * * 'But, where a case is one of equitable jurisdiction solely, the court is not bound to submit any issues of fact to a jury, and, if it does so, it is only for the purpose of "enlightening its conscience, and not to control its judgment." * * *'"

it would seem clear that Donahue considered it to be discretionary with the court whether any interrogatories should be submitted to a jury in an equity case.

However, Security Trust & Sav. Bank v. McClure (1925), 29 Ariz. 325, 241 P. 515 followed. This case held that:

" * * * Although the verdict of a jury in such a case be merely advisory, yet a litigant has the right to insist that the court shall listen to the advice, though he need not take it. * * *" (p. 333, 241 P. p. 517.)

Security Trust cites no authority for this holding, except paragraph 508 of the Civil Code of the Revised Statutes of Arizona of 1913, which would seem to have been modified by Ch. 125 of the Laws of 1921. (Paragraph 508 of the 1913 Code is shown as "omitted" in the Tables of A.R.S.1956.) Stukey v. Stephens (1931), 37 Ariz. 514, 295 P. 973, follows the broad statement of law contained in the Security Trust case, and holds that one party is entitled to rely upon a request for a jury trial when made by the opposing party. Among its language, which may have some bearing upon the problem at hand is the following:

" * * * This right, however, may be waived, and we have held that unless it is demanded seasonably such failure is equivalent to a waiver of a jury. * * *" (p. 516, 295 P. p. 974)

The Stukey case did not cite or overrule either Donahue v. Babbitt, supra, or the intervening case of Ainsworth v. National Bank (1928), 33 Ariz. 466, 266 P. 8. Ainsworth sheds light upon the problem now before the court. In this case, there were issues of fact in an equity jury trial. The trial court did not submit any interrogatories to the jury. The court held that under Ch. 125 of the Laws of 1921, it was not necessary to do so. The following is the language of the court:

"Under the provisions of this paragraph, (Ch. 125) whenever a jury is called in an equity case, we have held that all evidence submitted to the court must be also presented to the jury in order that it may answer the interrogatories submitted to it. Security Trust & Sav. Bank v. McClure, 29 Ariz. 325, 241 P. 515. And it is the duty of the court to listen to the advice of the jury in equity proceedings, no matter whether it is followed or not. Light v. Chandler Imp. Co., [33 Ariz. 101, 261 P. 969] supra. Under paragraph 542, su-

pra, however, the court is given discretion, even after a jury is called in an equity case, as to whether it should submit interrogatories at all. If it is of the opinion that such action is not necessary, it may refuse to submit any interrogatories, and in such case there would be no error in discharging the jury, since, if no interrogatories are submitted, there is nothing for it to pass on." (33 Ariz. 471, 472, 266 P. 10)

Four Arizona Supreme Court cases hold that when there is no disputed issue of fact in an equity case, the court may discharge the jury without submitting anything to it. Light v. Chandler Improvement Co. (1928), 33 Ariz. 101, 261 P. 969, 57 A.L.R. 107; Rundle v. Winters (1931) 38 Ariz. 239, 298 P. 929; Greer v. Goesling (1939), 54 Ariz. 488, 97 P.2d 218; Brooks v. Brooks (1942), 60 Ariz. 119, 132 P.2d 431.

The reasoning and holding of Ainsworth were followed in Stephens v. White (1935), 46 Ariz. 426, 51 P.2d 921; and Stewart v. Schnepf (1945), 62 Ariz. 440, 158 P.2d 529. Haynie v. Taylor (1950) 69 Ariz. 339, 213 P.2d 684, however, holds that Stephens v. White and Stewart v. Schnepf had both been overruled by implication in Greer v. Goesling, supra. Haynie finds nothing wrong with the Ainsworth decision, however, and even refers to the quotation from it given in this opinion to support the holding of the Haynie case that:

"* * * the court may not withdraw the determination of controverted facts from the jury and that the case may only be withdrawn from their consideration where there is no controverted issue of fact, in other words, only in cases where if it were an action at law the court would be required to direct an instructed verdict. * * *" (69 Ariz. p. 346, 213 P.2d p. 689)

The last case in this confusing chain is Lane v. Mathews (1952), 75 Ariz. 1, 251 P.2d 303, which held that there was:

"* * * no legal basis for the lower court's refusal to submit to the jury an interrogatory submitted by appellants directly raising the question of what the true agreement was between the parties. * * *"

This state of the record leaves it unclear as to whether this requirement that controverted issues in an equity case be submitted to the jury is of constitutional or statutory origin, and, if statutory, what statute is pertinent.

There being no case holding it to be error not to submit an issue of fact as to which there has been no request for an interrogatory, this court is of the opinion that better logic and greater practicality lie with the holding that there is no error if the court fails to submit an issue of fact to an equity jury, where there has been no request for an interrogatory on the subject by either party.

This court can see no reason why the rule of waiver contained in Rule 49(g) does not apply to an equity action. Other provisions of Rule 49 obviously pertain to an equity proceeding. There are no provisions in the rules for the number of jurors to render a verdict, the taking of a verdict, the procedure for polling the jury, et cetera, other than those contained in Rule 49. The fact that Rule 39(l) does not contain the waiver provision is explained through the history of the rule. To the extent that Rule 39(l) conflicts with Rule 49(g), it should prevail in an equity action, because it is a specific rule as opposed to a general rule. Desert Waters, Inc. v. Superior Court (1962), 91 Ariz. 163, 171, 370 P.2d 652. However, to the extent there is no inconsistency, this court holds that Rule 49(g) applies to an equity case.

The plaintiffs ask this court to adopt the law which appears to be established in the State of Texas under a rule similar to Rule 49(g) which is to the effect that if a party fails to request an interrogatory upon a "controlling" or "ultimate" fact, which is part of that person's affirmative case, the party thereby waives such claim

or defense. Farmers Mutual Protective Association of Texas v. Thompson (Tex. CA 1963), 365 S.W.2d 226. Cases following this line of reasoning are involved in a running conflict between "controlling" and "special" issues and "ultimate" facts versus "subordinate" facts. Wichita Falls & Oklahoma Ry. Co. v. Pepper (1940) Sup., 135 S.W.2d 79. We do not wish to lead Arizona in this direction. These holdings have little to recommend them, and this court prefers the plain language of Rule 49(g) which in effect states that if there is no demand for any particular issue to be submitted to the jury, such issue is deemed to be submitted to the court for decision.

Accordingly, there being no valid reason stated by the court for the granting of a new trial as to the issue of constructive trust, the order granting a new trial as to that issue must be set aside. State v. McMinn, supra. It is the opinion of this court that a retrial of this critical issue will not approach any closer to the truth than did the decision of the conscientious and experienced trial judge to whom under our law the responsibility for making this decision was delegated.

As to the remaining issue as to which a new trial was granted, this court holds that the order was within the discretion of the trial court. The briefs of both parties assume that if there was any substantial evidence to support the original decision of the trial court, the granting of a new trial for the stated reason (" * * * that the awards to the defendant herein are not supported by the evidence * * *") was error. This court does not believe that this is the law in this jurisdiction.

■ Our Supreme Court has held on numerous occasions that if the evidence is in substantial conflict, an order of the trial court granting a new trial for insufficiency of the evidence will not be reversed on appeal. Caldwell v. Tremper (1962), 90 Ariz. 241, 367 P.2d 266.

Though all of the decisions in this regard in Arizona have been in a case tried to a jury, this court believes that this law also pertains to one tried to the court. Rule 59, Rules of Civil Procedure, under which a motion for new trial is brought, pertains to: "A verdict, *decision* or judgment * * *" (Emphasis added)

There appears to be no distinction in the rule between a verdict of a jury and the decision of the court insofar as a finding upon a factual issue is concerned. In California, where there are similar rules pertaining to new trial and the right of the trial court to modify its decision without a new trial (§ 662 Code of Civil Procedure of California), it has been held that the order of the trial court granting a new trial for insufficiency of the evidence will not be reversed if the evidence is in conflict, though the order pertains to a case tried to the court. Prout v. Perkins (2nd Dist. 1937), 21 Cal.App.2d 343, 69 P.2d 194; Beal v. Dunn (1st Dist. 1941) 44 Cal.App.2d 785, 113 P.2d 242; Traub v. Coffee Break Service (2nd Dist. 1962), 210 Cal.App.2d 711, 27 Cal.Rptr. 79.

■ In an action submitted to the court for decision, there is obviously much less reason for granting a new trial and much to recommend the implementation of Rule 59(b), which permits the court, without a new trial, to "make new findings and conclusions, and direct the entry of a new judgment." By making use of this provision, the trial court in this action might very well have obviated the necessity of a retrial as to the subsidiary issues now under discussion. An examination of the record convinces this court there was sufficient evidence to uphold the finding of the court on the questions of whether there was an agreement by Chester to pay for the taxes on the subject land and as to the rental value of the subject property.

While there was no direct evidence of any oral rental agreement by Chester to

pay for the taxes, circumstantial evidence would support a finding to this effect. The two persons who would have most likely been able to testify directly to such an agreement are now dead. But the undisputed circumstances connected with the occupancy of this land by Chester reasonably lead to the conclusion that, if there was no oral agreement that parcels A and B were to be his property, then he was occupying said lands under the obligation to pay all current expenses in connection therewith. His testimony to the effect that the only reason he did not pay the taxes was that he was short of money is an admission against interest on this issue.

This court, however, rejects the defendant's contention that the plaintiffs are bound by their admission in the pleadings that they owed these taxes. Reading the plaintiffs' reply to the defendant's counterclaim as a whole, it is apparent this admission is made in connection with the plaintiffs' contention that the property belongs to the plaintiffs under the oral trust agreement. Pleadings should be construed so as to do substantial justice. Rule 8(a) Rules of Civil Procedure.

As to the rental value of the property, though there was no direct testimony as to its rental value, there was testimony as to its sales value, the rental value of a cotton allotment thereon, the approximate number of acres of the cotton allotment, and other facts which bear upon the question of the rental value of this land. These would be sufficient to support a decision on rental value. Grummel v. Hollenstein (1962), 90 Ariz. 356, 360, 367 P.2d 960.

However, these issues are certainly not without some substantial conflict and therefore the decision of the trial court to grant a new trial as to these issues will not be overruled.

On the matter of defendant's attorney's fees, which were fixed by the trial court in the sum of $10,000.00, this court holds that it was within the trial court's discretion to set aside this award and call for the introduction of evidence upon the subject. This court, however, does not believe the doctrine of Crouch v. Pixler (1958), 83 Ariz. 310, 320 P.2d 943, is controlling. In Crouch v. Pixler, the amount of attorney's fees was one of the issues before the court for trial, the recovery being sought under a written contract providing for attorney's fees.

In this case, recovery of attorney's fees is sought under A.R.S. § 12–1103, subsec. B, which provides that in a quiet title action, if there has been a proper tender of a quitclaim deed and $5.00, "the court may allow plaintiff, in addition to the ordinary costs, an attorney's fee to be fixed by the court." In Murphey v. Gray (1958), 84 Ariz. 299, 327 P.2d 751, it was held that:

"* * * Attorney fees where based directly or indirectly on statute are analogous to and classed in the same category as costs. * * *"
(84 Ariz. 307, 327 P.2d 756)

Though there is diversity of authority, the majority rule seems to be that when attorney's fees are to be recovered as costs, the court may take judicial notice of the value of the services performed. 20 C.J.S. Costs § 218e, p. 462; Forno v. Coyle (Alaska 9th CA 1935) 75 F.2d 692; Boydstun v. Cook and Company (1960) 238 Miss. 324, 118 So.2d 354; Globe Indemnity Co. v. Sulpho-Saline Bath Co. (Neb. 8th CA 1924), 299 F. 219.

But certainly, it is within the discretion of the trial court to reexamine its finding on this subject, to permit testimony on the subject of the value of attorney's services rendered, and/or reconsider its determination that attorney's fees should be allowed at all. McNeil v. Attaway (1960), 87 Ariz. 103, 118, 348 P.2d 301. This court holds there was no abuse of discretion in the trial court opening up its judgment to permit this to be done.

For the reasons heretofore stated, the order of the trial court granting a new trial

on the issue of a constructive trust is reversed; the order granting a new trial as to the issues of an agreement to pay taxes, rental value and attorney's fees is affirmed.

KRUCKER, C. J., and HATHAWAY, J., concur.